**FILED**

06821-029
Oakdale-FCI
P.O. Box 5000
Oakdale, La 71463

NOV 3 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DANE ALLEN YIRKOVSKY,<br><br>    Petitioner,<br><br>vs.<br><br>ALBERTO GONZALES, esq.,<br>Attorney General For The<br>"UNITED STATES",<br>   and<br>HARLEY G. LIPPIN, Dir.,<br>Federal Bureau of Prisons,<br><br>    Respondents.<br>_____/ | CASE NUMBER   1:06CV02055<br><br>JUDGE: Unassigned<br><br>DECK TYPE: Habeas Corpus/2255<br><br>DATE STAMP:   11 30/2006<br><br>APPLICATION FOR<br>WRIT OF HABEAS CORPUS<br><br>BROUGHT IN THE NATURE OF<br>COMMON LAW WRIT OF<br>HABEAS CORPUS<br>§2241 |

**COMES NOW,** Dane Allen Yirkovsky, in want of counsel, Petitioner, in the above styled action, (hereinafter "Petitioner"), and as and for the VERIFIED PETITIONER FOR WRIT OF HABEAS CORPUS, shows to the court as follows:

1.

That the relief sought herein is provided under the Law of Habeas Corpus, in the Common Law, the Constitution and Statutes of the United States of America, and the Federal Civil Court Rules of Procedure. (See, attached Memorandum of Law with Incorporated Points and Authorities).

**RECEIVED**

NOV 0 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

///// - 1 - Application of Common Law Writ of Habeas Corpus

2.

That beginning on, April 16, 2000, ...   Petiioner herein, has been and is presently imprisoned and restrained of his liberty in violation of the rights thereof as set forth and guaranteed in the Constitution of the United States and Federal Laws made in conformance therewith.

3.

That Dane Yirkovsky, Petitioner herein, is incarcerated in the Federal Correctional Institution, **Oakdale**, in violation of the Constitutional rights of the Petitioner herein, as set forth, without restriction, in Articles V, VI, VIII, and XIV in Amendment of the Constitution of the United States, as Amended AD 1791.

4.

That the said incarceration of, Dane Yirkovsky, Petitioner herein, was ordered by **U.S. District Judge**

a copy of the order of Judgment in such case is attached herewith as Exhibit (a), to establish that the respondent named above, in the caption area, are the proper custodians over the Petitioner, and thereby the appropriate parties to the instant cause.

5.

That this court has personal jurisdiction over the respondents named in the caption area above in the nature of 28 U.S.C. §88; 49 Stat. 1921, June 25, 1936, and the 80th Congress House Report No. 308, it is shown that the district court of the United States, for the District of Columbia, is a Constitutional Court, rather than a legislative-Territorial Court, and

therefore is duly empowered under the Constitution of the United States of America, as amended anno Domini 1791, and by way of an Act of Congress, to entertain the isntant cause at bar, whereby the Petitioner invokes this Court's Original Jurisdiction.

6.

That defense counsel rendered in effective assitance where counsel failed to initio to raise or challenge any of the issues raised herein.

7.

That the government moved in want of **Legislative Territorial** or **Admiralty Jurisdiction** over the locus in quo.

8.

That the government moved in want of **Federal Subject Matter Jurisdiction** by failing to charge or prove that the alleged prohibitive act transcended the borders of the sovereign state in violation of the **Federal Interstate Commerce Clause.**

9.

That there is no amendment to the Federal Constitution ratified by three-fourths of the sovereign state to proved for nation wide jurisdiction and application of the **Federal Statutory Provisions** under which the Petitioner is charged.

10.

That the **Federal Statutory Provisions** under which the Petitioner is charged are unenacted by Congress, have not been promulgated in the **Federal Register** or possessed implementing authorities in the **Code of Federal Regulations, and** thus do not apply over private citizens.

///// - 3

Application of Common Law Writ of Habeas Corpus

11.

That to construe or to convert the instant non-statutory **Common Law Writ of Habeas Corpus** into a statutory pleading will be taken as a denial of the pleading as submitted, thus the sustainment of the unlawful incarceration of the Petitioner causing injury and in the nature of 42 U.S.C. §1983.

12.

That the court is presumed to possess superior knowledge of **Law**, thus the court would be deemed to know from the facts and the law presented and the proceeding before the Court of Record that the Petitioner is in custody in violation of his Constitutional Rights where the court is compelled to provide a rememdy-in-law for relief from such unlawful custody.

**WHEREFORE**, in the nature of §2243, of Title 28, of the United States Code and §2241 (June 25, 1948, c.646, 62 Stat. 965), the Petitioner requests the court to prepare and issue an Order directing the respondents to show cause, within 3 days, from the date of service why the instant Common Law Writ, should not be GRANTED, where all issues presented, are only questions of law. The respondent will not be under burden to produce records, evidence, witnesses, or prepare for a hearing, and no additional time would be required.

In the nature of the principals pronounced in 1 Stat. 122, May 26, 1970, Sec. 2, March 27, 1804, 2 Stat. 298, Sec. 2, the Petitioner executes the foregoing.

Son done this 18 day of Oct , 2006, anno Domini 2006.

Respectfully submitted

Dane Allen Yirkovsky

Dane Allen Yirkovsky
06821-029
Oakdale-FCI
P.O. Box 5000
Oakdale, La 71463

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANE ALLEN YIRKOVSKY,                )
                                     )
              Petitioner,            )          Case No._____
                                     )
                                     )
       vs.                           )          PETITION FOR
                                     )          COMMON LAW
                                     )          WRIT OF HABEAS CORPUS
ALBERTO GONZALES,                    )          BY A PERSON IN
Attorney General For The             )          FEDERAL CUSTODY
"UNITED STATES,"                     )          §2241
                                     )
       and                           )
                                     )
HARLEY G. LIPPIN, Dir.,              )
Federal Bureau of Prisons,           )
                                     )
              Respondents.           )
_____     )

### CONVICTION UNDER ATTACK

1.  Name and location of the court which entered the judgment of
    conviction under attack:

    **United States District Court of Iowa, Cedar Rapids Division**

2.  Date of judgment of conviction was entered: October 12, 2000
3.  Case Number:  CR-99-0064
4.  Type and length of sentence imposed:  __180 months__
5.  Are you presently serving a sentence imposed for a conviction
    other than the conviction under attack in this motion?

    ____ Yes  __X__ No

6.  Nature of the offense involved (all counts)
    **One count of possession of ammunition 18 U.S.C. §§922(g) and
    924(e).**

*06 2055*

**FILED**

NOV 3 0 2006

//// - 1   PETITION OF COMMON LAW WRIT OF HABEAS CORPUS   NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

7.  What was your plea?

    (Check one) ___Not Guilty **X** Guilty ___ Nolo Contenders

8.  If you entered a plea of guilty to one count or indictment,
    and a not guilty plea to another count or indictment, give
    detailes:

    **N/A**

9.  If you entered a plea of guilty pursuant to a plea bargin,
    state the terms and  conditions of the argeement:

    **Plea agreement was for 180 months**

10. Kind of trial (Check one) ___ Jury ___ Judge Only **N/A**

11. Did you testify at trial? ___ Yes ___ No **N/A**

### DIRECT APPEAL

12. Did you appeal from the judgment of conviction? **X** Yes ___No

13. If you did appeal, give the name and location of the court
    where the appeal was filed, the result, the number and date
    of the court's decision (or attach a copy of the court's
    opinion): **See attachments**

14. If you did not appeal, explain why you did not: **N/A**

### POST-CONVICTION PROCEEDINGS

15. Other than a direct appeal from the judgment of conviction and
    sentence, have you previously filed any petition, appliactioons,
    or motions with respect to this judgmentin any federal court?

    **X** Yes ___ No

16. If your answer to 15 was "Yes" give the following information:

    (a) **FIRST**, petition, application or motion.

        1) Name of court: **United States District Court of Iowa.**

        2) Nature of proceeding **§2255.**

        3) Claims raised: **Ineffective assistance of counsel**

        4) Did you receive an evidentiary hearing on your petition,
           application or motion? ___ Yes **X** No

///// - 2  PETITION FOR COMMON LAW WRIT OF HABEAS CORPUS

5)  Result:  **Denied**

6)  Date of result:  **N/A**

7)  Did you appeal the result to the federal appellate court having jurisdiction? _____ Yes  **X** No

If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision ( or attach a copy of the court's opinion or order):

8)  If you did not appeal, briefly explain why you did not.  **N/A**

(b)  As to any **SECOND** petition, application or motion, give the following information:

1)  Name of the Court:  **UNITED STATES DISTRICT COURT OF IOWA.**

2)  Nature of proceeding(s):  **Application for funds to employ expert witness, pursuant to title 18 U.S.C. §3006A(e), motion to expand the record-Habeas Rule 7; and, motion for evidentiary hearing-Habeas Rule 8.**

3)  Claims raised:  **See attachments**

4)  Did you receive an evidentiary hearing on your petiions, applications, or motions? _____ Yes  **X** No

5)  Result:  **All Denied**

6)  Date of result(s):  **N/A**


### CLAIMS

17.  State concisely every claim that you are being held unlawfully for.  Summarize briefly the facts supporting each claim.  If necessary, you may attach extra pages stating additional claims and supporting facts.  You should raise in the application all claims for relief which relate to the conviction under attack.

In order to proceed in federal court, you ordinarily must exhaust the administrative remedies available to you as to each claim on which you request action by the federal court.

**CLAIM ONE:**

## Ineffective assistance of counsel

1)  Supporting facts: (Without citing legal authorities or argument state briefly the facts in support of this claim)

    **Counsel failed ab initio to raise or challenge any of the issues presented herein.**

2)  Did you seek administrative relief as to claim one?

    ____ Yes    **X** No

    If your answer is "Yes," describe the procedure followed and the result. If your answer is "No," explain why you did not seek administration relief.

    **We have administrative grievance to redress the challenges raised herein. Bureau of Prisons (BOP) is compelled to abide by judgment order of the court.**

**CLAIM TWO:**

## Lack of Federal Legislative Jurisdiction over the Locus in quo.

1)  Supporting Facts: (Without citing legal authorities or arguments state briefly the facts in support of this claim)

    **See, Attached Memorandum of Law with Incorporated Points and Authorities.**

2)  Did you seek administrative relief as to claim two?

    ___ Yes    **X** No

    If your answer is "Yes," describe the procedure followed and the result. If your answer is "No," explain why you did not seek administrative relief.

we have administrative grienvance to redress the
challenges raised herein.  Bureau of Prisons (BOP)
is compelled to abide by judgment order of the court.

**CLAIM THREE:**

**Lack of Federal Subject Matter jurisdiction over the**
**alleged prohibitive conduct - want of Commerce Nexus.**

1)  Supporting Facts:  (Without citing legal authorities
    or argument state briefly the facts in support of
    this claim)

    **See, attached Memorandum of Law with Incorporated**
    **Points and Authorities.**

2)  did you seek administrative relief as to claim three?

    ___ Yes  **X** No

    If you answer is "Yes," describe the procedure followed
    and the result.  If your answer is "No," explain why
    you did not seek administrative relief.

    **We have administrative grievance to redress the**
    **challenges raised herein.  Bureau of Prisons (BOP)**
    **is compelled to abide by judgment order of the court.**

**CLAIM FOUR:**

**Misapplication of Federal Law, where such is unenacted**
**unpromulgated and unimplemented.**

1)  Supporting Facts:  (Without citing legal authorities
    or arguments state briefly the facts in support of
    this claim)

    **See, attached Memorandum of Law with Incorporated**
    **Points and Authorities.**

2)  Did you seek administrative relief as to claim four?

    ___ Yes  **X** No

If your answer is "Yes," describe the procedure followed and the result.  If your answer is "No," explain why you did not seek administrative relief:

**We have administrative grievance to redress the challenges raised herein.  Bureau of Prisons (BOP) is compelled to abide by judgment order of the court.**

18. Do you have any petitions, applications, motions or appeal now pending in any court, either state or federal, regarding the conviction under attack?

___ Yes  **X** No

If "Yes," state the name of the court, case file number (if known), and the nature of the proceeding:  **N/A**

19. State briefly why you believe that the remedy provided by **28 U.S.C. §2255** (Motion to Vacate Sentence) is inadequate or ineffective to test the legality of your detention.

**Because the Legislative Territorial Court wherein the issues now complained of arose, lacks the Constitutional authority to entertain and to adjudicate the issues herein and hereinafter, thus a §2255 Motion is inadequate and inappropriate.**

**WHEREFORE,** applicant prays that the court GRANT him such relief to which he may be entitled in this proceeding.

Dated: ___Oct 18___ , 2006

Respectfully submitted by:

Dane Allen Yirkovsky/pro-se

RECEIVED          7 2002

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

FILED
U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

2002 JAN -7  AM 11: 28

CEDAR RAPIDS HQQTRS. OFFICE

BY ___

No. 00-3442

United States of America,

      Appellee,

    v.

Dane Allen Yirkovsky,

      Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Northern District of Iowa
\*
\*
\*

Submitted:  April 11, 2001

Filed:  August 1, 2001

Before McMILLIAN, LOKEN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Dane Allen Yirkovsky ("Yirkovsky") appeals from a final judgment entered in the United States District Court[1] for the Northern District of Iowa sentencing him to 180 months in prison after he plead guilty pursuant to a written plea agreement to possession of ammunition as a felon in violation of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §§ 922(g) and 924(e).  See United States v. Yirkovsky, No. 1:99CR0064-001 (N.D. Iowa Oct. 12, 2000) (judgment).  For reversal, Yirkovsky

---

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

argues that his sentence was grossly disproportionate to the gravity of the offense, thereby constituting cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P.4(a). For the reasons set forth below, and pursuant to 8th Cir. R. 47B, we affirm the judgment of the district court.

The factual background is based on the facts to which Yirkovsky stipulated in his plea agreement and to which he testified in his hearings in the district court. In late fall or early winter of 1998, Yirkovsky was living with Edith Turkington at her home in Cedar Rapids, Iowa. Instead of paying rent, Yirkovsky agreed to remodel a bathroom at the home and to lay new carpeting in the living room and hallway. While in the process of removing the old carpet, Yirkovsky found a Winchester .22 caliber, super x, round. Yirkovsky put the round in a small box and kept it in the room in which he was living in Turkington's house.

Subsequently, Yirkovsky's ex-girlfriend filed a complaint alleging that Yirkovsky had her property in his possession. A police detective spoke to Yirkovsky regarding the ex-girlfriend's property, and Yirkovsky granted him permission to search his room in Turkington's house. During this search the detective located the .22 round. Yirkovsky admitted to police that he had placed the round where it was found by the detective.

Yirkovsky was indicted on September 28, 1999, and plead guilty to one count of being a felon in possession of ammunition after having previously been convicted of three or more violent felonies, 18 U.S.C. § § 922(g), 924(e). Title 18 U.S.C.

-2-

§ 922(g) provides that it is unlawful for a person convicted of a crime punishable by imprisonment for a term exceeding one year, to possess ammunition. Section 924(e)(1) provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years, and notwithstanding any other provision of the law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under 922(g).

U.S.S.G. § 4B1.4(a) provides that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal."

Yirkovsky entered into a written plea agreement in which he acknowledged guilt as charged and further acknowledged that under U.S.S.G § 4B1.4 his base offense level should be calculated by starting at 33, with a three-level downward adjustment for acceptance of responsibility, resulting in a final offense level of 30. The plea agreement further stated that Yirkovsky understood that under U.S.S.G. § 5G1.1(b) he was subject to a 15-year (180 months) statutory minimum sentence even if the guideline range otherwise established is below 180 months.[2]

Because Yirkovsky had two convictions for second degree burglary and one for attempted burglary, and was convicted of burglary of three United States post offices, the district court found that Yirkovsky was an armed career criminal under 18 U.S.C. § 924(e). See Transcript of plea hearing at 15-22. Yirkovsky did not object to this

---

[2]U.S.S.G. § 5G1.1(b) provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."

finding. The district court sentenced Yirkovsky to the 180-month mandatory minimum sentence required by 18 U.S.C. § 924(e) but withheld the actual entry of the sentence, giving Yirkovsky the opportunity to file a brief on the issue of whether or not the fifteen-year mandatory minimum sentence constitutes cruel and unusual punishment under the Eighth Amendment. See Transcript of sentencing hearing at 9. Subsequently, the district court held that it had no discretion in the matter and sentenced Yirkovsky to 180 months imprisonment.[3]

On appeal, Yirkovsky argues that the sentencing guidelines which require that he be imprisoned for 180 months violate his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. In support of this position, he argues that a sentence of 180 months in prison is grossly disproportionate to his crime of having in his possession only one round of ammunition. In further support of his argument, Yirkovsky cites decisions from the Northern District of Iowa from 1994 through 1999, in which defendants were sentenced for violations of 18 U.S.C. § § 922(g)(1) and 924(e). See Appellant's Ex. 1. Yirkovsky suggests that, although his crime was the least serious, he received a sentence which was disproportionately lengthy when compared to these cases. However, Yirkovsky acknowledges in his brief to this court that "[e]very circuit to have considered [this] issue has concluded that the fifteen year mandatory minimum sentence under the ACCA is neither disproportionate to the offense nor cruel and unusual punishment." Brief for Appellant at 10 (citing United States v. Reynolds, 215 F.3d 1210 (11th Cir. 2000), cert. denied, 121 S. Ct. 500 (2000)).

---

[3]The district court acknowledged that, with a base offense level of 33, with a three-level downward adjustment and a criminal history category of VI, the sentencing range "would normally be 168 to 210 months, but because of the fifteen-year mandatory minimum, that becomes 180 to 210 months." Transcript of plea hearing at 22.

In <u>United States v. Rudolph</u>, 970 F.2d 467, 470 (8th Cir. 1992) (<u>Rudolph</u>), this court held that the mandatory minimum sentence of fifteen years imprisonment under § 924(e) is not cruel and unusual punishment and does not violate the Eighth Amendment. Subsequently, we held in <u>United States v. Villar</u>, 184 F.3d 801, 803 (8th Cir. 1999), that our consideration of this issue is foreclosed by our decision in <u>Rudolph</u>.[4] We, therefore, hold that the district court did not err in finding that imposition of the statutorily mandated minimum sentence of 15 years (180 months) is not cruel and unusual punishment under the Eighth Amendment. We affirm the judgment of the district court imposing this sentence. <u>See</u> 8th Cir. R. 47B.

A true copy.

Attest:    *Michael E. gans*

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]In our view Yirkovsky's sentence of fifteen years is an extreme penalty under the facts as presented to this court. However, as we state above, our hands are tied in this matter by the mandatory minimum sentence which Congress established in 18 U.S.C. § 924(e).

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

### No. 00-3442

---

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Northern District of Iowa |
| Dane Allen Yirkovsky, | * |
| | * |
| Appellant. | * |

---

### ORDER

The petition for rehearing en banc is denied. Chief Judge Wollman, Judge Bowman, and Judge Morris Sheppard Arnold would grant the petition.

The petition for rehearing by the panel is also denied.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting, in which Chief Judge Wollman, and Judge Bowman, join.

Under the relevant rules, a case is appropriate for *en banc* consideration if a rehearing "is necessary to secure or maintain uniformity" in our decisions, or if the case "involves a question of exceptional importance." *See* Fed. R. App. P. 35(a)(1) and (a)(2). I believe that this case qualifies for rehearing *en banc* on both counts.

The answer to the question of whether a sentence violates the eighth amendment is heavily dependent on the circumstances of the individual case, and so the fact that no federal appellate court has ever found that a fifteen-year

mandatory sentence under ACCA was unconstitutional is entitled to even less weight than it usually is. For instance, *United States v. Reynolds*, 215 F.3d 1210 (11th Cir. 2000) (*per curiam*), *cert. denied*, 531 U.S. 1000 (2000), which the panel opinion cites, *see United States v. Yirkovsky*, 259 F.3d 704, 706-07 (8th Cir. 2001), is not a particularly persuasive authority because it involved a twelve-gauge shotgun, *see* 215 F.3d at 1212, not merely a single twenty-two caliber bullet. The panel opinion also states that while the sentence in this case represented "an extreme penalty under the facts," the court felt that its "hands [were] tied in this matter by the mandatory minimum sentence which Congress established." *Yirkovsky*, 259 F.3d at 707 n.4. With respect, and on the contrary, a court is obliged to determine whether a criminal sanction offends the eighth amendment, and I believe that we ought to take the case up *en banc* to consider whether the panel's holding does not run counter to our recent case of *Henderson v. Norris*, 258 F.3d 706 (8th Cir. 2001).

The draconian nature of this sentence is as evident to me as it was to the panel, and the severity of sentences in general under the United States Sentencing Guidelines and recent congressional enactments is, or ought to be, a matter of great public concern to every citizen. The number of people incarcerated in this country is unparallelled and growing exponentially, and the costs of criminal penalties in terms of dislocated lives and public treasure is probably incalculable. The court *en banc* ought therefore to consider the constitutionality of the sentence imposed in this case. I suggest that on its face the sentence is grossly disproportionate to the offense for which it was imposed.

I would therefore grant the petition for rehearing *en banc*.

A true copy

ATTEST:    *Michael E. Gans*

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

APR 02

| | | |
|---|---|---|
| Dane Yirkovsky,<br>Petitioner,<br><br>vs.<br><br>United States of America,<br>Respondent. | ]<br>]<br>]<br>]<br>]<br>]<br>]<br>] | No. CR99-64<br>No. CO3-13<br><br>Motion for Expert Witness<br>Funds, 18 USC §3006A(e) |

## Ex Parte Application for Funds to Employ Expert Witness Pursuant to Title 18 U.S.C. §3006A(e)

Comes Now, Dane Yirkovsky, Petitioner pursuant to 18 U.S.C.§3006A(e) and moves the Court to authorize funds($200-300) to employ a scientic expert to aid in the complex determinations and analysis of the attached drug toxicology reports which were produced by the Government in Petitioner's pretrial criminal proceedings.  Petitioner offers the following in support thereof:

1)  Petitioner is and has been an indigent under 18 USC §3006A and cannot afford to pay for an expert witness to explain the Goverment's reports of Petitioner's constant drug abuse.

2)  If the Court finds Petitioner was not competent to assist in his defense and was coerced into entering a guilty plea, then it may fashion   appropiate  remedy for the Constituional violation.

3)  Petitioner expects the expert will discuss the inability of a person to think, act or assist in his defense with the extremely high levels of opiates in his system in the time before and after he pled guilty.  Other witnesses will be called that will testify to Peitioner's unstable mental condition during his criminal prosecution.

Wherefore, Petitioenr earnestly prays the Court will authorize the requested funds to employ an expert from  Sedlacek Treatment facility.

Signed:  _Dane Yirkovsky_    4-1-04
Dane Yirkovsky            Date
POB 4000  FMC
Rochester   MN   55903
#06821-029

1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

APR 07

Dane Yirkovsky,
    Petitioner,         ]
                          ]    No.  CR99-64
        vs.         ]    No.  CO3-13
                          ]    Motion to Expand the Record
United States of America,  ]    Habeas Rule 7
    Respondent.         ]

## Petitioner's Motion to Expand the Record; Habeas Rule 7

Comes Now, Dane Yirkovsky, Petitioner without the aid or benefit of counsel to request the Court enter an order for the expansion of the record pursuant to habeas Rule 7.  Petitioner offers the folowing in support thereof:

    1)  Petitioner has alleged that he is actually innocent of the offense and that his plea is constitutionally unreliable due to his inability to help prepare a defense due to opiate abuse.  See Petitioner's Original Affidavit in Support of §2255, ¶4; Petitioner's Supplemental Affidavit in Traverse, ¶¶'s 4,5 & 15; PSIR ¶¶'s 7, 65-69.  Petitioner requests the Court to expand the record to include the attached Pretrial Report  and Drug Testings as they are additional evidence which support the issue of a coerced guilty plea.

    2)  In light of the Cedar Rapids Gazette reporting that Judge Reade refuses to accept guilty pleas from person on narcotics(see attached artilces),  the information on Petitioner's drug abuse and confusion should be admitted.  It is Judge Reade's independant duty to ensure there were no errors at the previous criminal proceed, inclusive of allowing a defendant to pled guilty while stoned out of his mind.  Family memebers and drug counselers will be expected to testify at the post-coviciton hearing, also.

               Signed:    _____  4-1-04
                           Dane Yirkovsky        date
                           POB 4000  FMC
                           Rochester  MN  55903
                           #06821-029

1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

Dane Yirkovsky,           ]
        Petitioner,       ]       No. CR99-64
                          ]       No. C03-13
            vs.           ]
                          ]       Request for Evidentiary
United States of America, ]       Hearing, Rule 8
        Respondent.       ]

## Petitioner's Motion for Evidentiary Hearing, Habeas Rule 8

**Comes Now,** Dane Yirkovsky, Peitioner without the aid or benefit of
counsel to respectfully request this Honorable Court enter an order
for an evidentiary hearing pursuant to Habeas Rule 8. Petitioner
offers the following, in support thereof:

1) Petitioner asserts that the instant file before the court
contains geniune issues of material fact that can only be resolved
by and through an evidentiary hearing, as proscribed under Habeas
Rule 8. On 25 February 2004, the Court files and the AUSA received
Petitioner's "Affidavit in Support of §2255". That sworn testimony
directly contradicts the Government's position and the testimony,
**if true** would require the Court to grant the requested relief. The
law of the Eighth Circuit is clear and found in **Grady v. U.S.,** 269
F3rd. 913, 919(8th-2001), "... the district court should have re-
solved the factual dispute by conducting an evidentiary hearing,
receiving evidence(including testimony) and issues findings ... Just
as the district court **may not deny a prisoner §2255 relief without
without holding an evidentiary hearing to resolve disputed questions
of fact**", citing **Kingsberry v. U.S.,** 202 F3rd. 1030(8th-2000).

2) The Government has offered no affidavits in opposition
of Petitioner's sworn testimony, with respect to his claims for
relief, but only offers "bare assertions" in opposition of Petitioner's
testimony. For example, with regard to the innocent possession
issues, AUSA Reinert pronounces unsupported issue of fact that

1

DANA ALLEN YIRKOVSKY
06821-029
Oakdale-FCI
P.O. Box 5000
Oakdale, La 71463

## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANE ALLEN YIRKOVSKY,** | **CASE No.** |
| Petitioner, | |
| | RE:  Case No._____ |
| **vs.** | |
| | **CAUSE** |
| **ALBERTO GONZALES, esq.,**<br>**Attorney General For The**<br>**"UNITED STATES",** | **MEMORANDUM OF LAW**<br>**WITH INCORPORATED**<br>**POINTS AND AUTHORITIES** |
| and | **IN SUPPORT OF COMMON**<br>**LAW WRIT OF HABEAS CORPUS** |
| **HARLEY G. LIPPIN, Dir.,**<br>**Federal Bureau of Prisons,** | §2241 |
| Respondents. | |
| _____/ | |

**BEFORE THIS HONORABLE COURT:**

**COMES NOW**, Dane Allen Yirkovsky, in want of counsel, accused in
the above referenced cause, and as for the instant Petitioner for
the Common Law Writ of Habeas Corpus, shows this Honorable Court
as follows:

**06 2055**

**FILED**

1.

NOV 3 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

That relief sought herein, is provided for under the Common
Law, the Constitution of the United States of America, as amended
A.D. 1791, Article 1 §9 Cl 2, and in the nature of 28 U.S.C. §2241.

2.

That this Honorable Court has personal jurisdiction over the respondents named in the  caption area, supra, in the nature of D.C. Code §13-422, and 28 U.S.C. §1331, 1332, and 28 U.S.C. §2241. where both respondents have their principle place of business within the District of Columbia.

3.

That in tha nature of **Adams v. United States**, DK. No. 97-2263 ( 2nd Cir. 1998), the Court is compelled to entertain the instant pleading as submitted and to not attempt to construe or concert the pleading into any other statutory provision.  See, **United States v. Morgan**,  346 U.S. 502, 505 (1954).

4.

That the Petitioner sets forth the following with incorporated points and authorities:

(a)  The jurisdiction of Federal courts is defined in the Constitution  at Article III for judicial courts, in Article I for legislative courts, and in Article IV for territorial courts. Some courts created by Acts of Congress have been referred to as "Constitutional Courts", whereas others are regarded as "Legis- lative Tribunals"  **28 U.S.C. §88 District of Columbia-Courts** Act of June 7, 1934, 48 Stat. 926, and Act June 25, 1936, 49 Stat. 1921, provide that the Court of Appeals of the District of Columbia, the Supreme Court, and District Court of the United States for the District of Columbia, are shown to be Constitutional courts created under Article III of the Constitution.  See, **O'Donoghue v. United States**, 289 U.S. 516 (1933), 77 L.Ed 1356, 53 S.Ct. 74, **Mookini**

**v. United States**, 303 U.S. 201 at 205 (1938), 82 L.Ed 748, 58 S.Ct. 543.  The **Federal Trade Commision v. Klesner**, 274 U.S. 145 (1927) and  **Claiborne-Annapolis Ferry Co. v. United States**, 285 U.S. 382 (1932).

(b)  That, defense counsel failed ab initio to raise or challenge any of the issues presented herein.

(c)  That the Petitioner is in custody for an act not done or committed in pursuance of an act of Congress or an order, process, judgment, or decree of a court or judge of the United States. And he is in custody in violation of the Constitution and the laws or treaties of the United States (28 U.S.C. §2241(c)(2)(3)).

(d)  That the federal statutory provisions under which the Petitioner is charged, have not been promulgated in either the Federal Register or the Code of Federal Regulations, thus the legitimate application of such statutory provisions are restricted to application over federal government only.

(e)  That the government has failed ab initio to establish federal subject matter jurisdiction, where it has failed to charge the sine qua non, an alleged violation of the Federal Interstate Commerce statute, as a prerequisite to the subsequent charged offense.

5.

That, the Petitioner now shows this Honorable Court that the Federal government lacked legislative, territorial, or admiralty jurisdiction over the locus in quo, and also lacked the Constitutional or Congressional authority to reach prohibitive acts alleged

to be criminal in nature, which were committed well within the borders of the sovereign state.

## INEFFECTIVE ASSISTANCE OF COUNSEL

That, defense counsel failed ab initio to raise or challenge the governments lack of **Federal Legislative, Territorial or Admiralty Jurisdiction** over the locus in quo. The Petitioner argues that there is no presumption in favor of jurisdiction, where the basis for jurisdiction must be affirmatively shown on the face of the record. See **Hartford v. Davies, 16 S.Ct. 1051 (1896).** The exclusive legislative jurisdiction of the federal government is not addressed in principle to subject matter, but to geographical location. See, **United States v. Beavens, 16 U.S. (3 Wheat) 336 (1818).** It is axiomatic that the prosecution must always prove (legislative, territorial or admiralty) jurisdiction over the geographical location whereon the alleged prohibitive acts were purported to have been committed, otherwise a conviction could not be sustained. See, **United States v. Benson, 495 F.2d 481 (1946).** Federal criminal jurisdiction is never presumed, and must always be proven, and can never be waived. See, **United States v. Rogers, 23 F. 658 (DC Ark. 1885).** In a criminal prosecution where the federal government is a moving party it must not only establish ownership of the property upon which the crimes allegedly occurred but they must also produce documentation that the state has ceded the jurisdiction to that property to them (view of the Supreme Court) in **Fort Leavenworth Railroad v. Iowa, 114 U.S. 525 (1885).** No jurisdiction exists in the United States to enforce federal criminal laws until consent to accept jurisdiction over acquired lands have been published and filed on  behalf of the United States as provided

and filed in 40 U.S.C. §255, and the fact that the state authorized
the federal government to take and exercise jurisdiction was immat-
erial. See, **Adams v. United States**, 319 U.S. 312, 63 S.Ct. 1122,
87 L.Ed. 1421 (1943).

7.

The distinction that jurisdiction is more than a technical con-
cept and is a Constitutional requirement. See, **United States v.
Johnson**, 337 F.2d 180 (affmd) 86 S.Ct. 749, 383 U.S. 169, 15 L.ED.
681 Cert den. **87 S.Ct. 44, 134 and at 385 U.S. 846, 17 L.Ed.2d
117.** In the United States, there are two separate and distinct kinds
of jurisdiction:  The jurisdiction of the states within their own
territorial boundaries, and then Federal jurisdiction.  Broadly
speaking, the state jurisdiction encompasses the legislative power
to regulate control and govern real and personal property, individ-
uals, and enterprises within the territorial boundaries of any given
state.  In contrast, Federal  jurisdiction is extremely limited:
In July of 1776, after declaring their independence, the new States
possessed all their sovereignty, power, and jurisdiction over all
soil and people in their respective territorial limits.  This con-
dition of supreme sovereignty of each state over all property and
persons within the borders thereof continued notwithstanding the
adoption of the Articles of Confederation.  In Article II, it is
expressly stated:

> " Each state retains its sovereignty freedom and independ-
> ence, and every power, of jurisdiction and right which is
> not by this Confederation, expressly delegated to the United
> States, In Congress assemble."

8.

As the history of the Confederation Government has shown each
State was indeed sovereign and independent to the degree that it
made the Central Government created by the confederation fairly
ineffectual.  These defects of the Confederation government strained
the relation between and among the states and the remedy became call-
ing a Constitutional Convention.  The representatives which assembled
at Philadelphia in May of 1787 to attend the Constitutional Conven-
tion met for the primary purpose of improving the commercial relations
among the states, although the product of the convention produced
more than this.  But no intention was demonstrated for the states
to surrender in any degree, the jurisdiction so possessed by the states
at the time, and indeed the Constitution as finally drafted continued
the same territorial jurisdiction of the states as existed in the
Articles of Confederation.  The essence of this retention of each state's
jurisdiction is embodied in the Constitution at Article I Section 8
Clause 17 of the  Constitution of the United States of America, which reads
as follows:

> "  To exercise exclusive legislation in all cases whatsoever
> over such districts (not exceeding Ten Miles Square) as may
> be cession of particular states, and acceptance of Congress
> becomes the seat of the government of the United States,
> and to exercise like authority over all places purchased by
> the consent of the Legislature of the states in which the
> same shall be for the erection of forts, Magazines, arsenals,
> dock-yards and other needful buildings."

9.

The reason for the inclusion of this clause in the Constitution
was and is obvious.  Under the Article of Confederation, the states retain

///// - 6  Memo. of Law with Incorporated Points and Auth. - N

full and complete jurisdiction over lands and persons within their
borders.  Since the time of the ratification and implementation of
the present Constitution of the United States, the United States
Supreme Court and all lower courts have had many opportunities to
construe and apply these provisions of the Constitution.  The es-
sence of all these decisions is that the states of this Nation have
exclusive jurisdiction of property and persons located within their
borders, excluding such land and persons residing thereon which have
been ceded to the United States.  Perhaps one of the earliest dec-
isions on this point was in the **United States v. Beavens**, 16 U.S.
**Wheat 336 (1818).**  This case involved a federal prosecution for murd-
er committed onboard the warship, Independence anchored in the harbor
of Boston, Massachusetts.  The defense argued that only the state
had jurisdiction to prosecute and argued that the federal circuit
courts had no jurisdiction of this crime supposedly committed within
the Federal Admiralty jurisdiction.  In the argument before the
Supreme Court, counsel for the United States admitted as follows:

> " The exclusive jurisdiction which the United States have in forts,
> dock-yards ceded to them is derived from express assent of the states
> by whom the cessions are made.  It could be derived in no other manner;
> because without it, the authority of the states would be supreme and
> exclusive therein."  **3 Wheat at 350, 351**

10.

In holding that the state of Massachusetts had no jurisdiction
over the crime the court held:

> " What then is the extent of jurisdiction which a states possesses?"
>
> " We answer, without hesitation the jurisdiction of a state is co-
> extensive with it's territory, co-extensive with it's legislative power."
> **3 Wheat at 386, 387**

" It is observable that the power of exclusive legislation (which
is jurisdiction) is united with cession of territory, which is to
be the free act of the states.  It is difficult to compare the two
sections together, without feeling a conviction not to be strenght-
ened by any commentary on them, that in describing the judicial power,
the framers of our constitution had not in view any cession of territ-
ory or, which is essentially the same of general jurisdiction." **3**

**Wheat at 388**


                              11.


Thus in **Beavens**, the court established a principle that Federal
jurisdiction extends only over the areas wherein it possesses the
power of exclusive legislation, and this is a principle incorpor-
ated into all subsequent decisions regarding the extent of Federal
Jurisdiction.  To hold otherwise would destroy the purpose, intent
and meanings of the entire Constitution of the United States.  One
year later the Supreme Court of New York was presented with the
same issue, of whether the state of New York had jurisdiction over
a murder committed at Fort Niagara, a Federal fort.  In **People v.**
**Godfrey, 17 Johns 225 N.Y. (1819)**, that court held that the fort
was subject to the jursdiction of the state since the lands therefore
had not been ceded to the United States, the rationale of it's opin-
ion stated:

> " To oust this state of its jurisdiction to support and maintain its
> laws and to punish crimes, it must be shown that an offense committed
> within the acknowledged limits of the state, is clearly and exclusively
> cognizable by the laws and courts of the United States.  In the case
> already cited Chief Justice Marshall observed that to bring the offense
> within the jurisdiction of the courts of the union, it must have been
> committed out of the jurisdiction of any state." It is not (he says)
> the offense committed but the place in which it is committed, which
> must be out of the jurisdiction of the state. **17 Johns, at 233**
> (emphasis added)

12.

The case relied upon by this court was the **United States v. Beavens, supra.** At about the same time that the New York Supreme Court rendered it's opinion in **Godfrey,** a similar situation was before a Federal Court, the only difference being that murder was committed in and occurred on lands which had been ceded to the United States. In the **United States v. Cornell**, 2 **Manson** 60, 1cir. (1819), the Court held that the case fell within Federal jurisdiction, describing such jurisdiction as follows:

> " But although the United States may well purchase and hold lands for public purposes within the territorial limits of a state, this does not of itself oust the jurisdiction or sovereignty of such state over lands purchases. It remains until the state has relinquished its authority over the lands either expressly or by necessary implication. When therefore a purchase of land for any of these purposes is made by the National Government and the state legislature has given its consent to the purchase, the lands so purchased by the very terms of the Constitution ipso facto falls within the exclusive legislation of Congress and the state jurisdiction is completely ousted." **2 Manson at 63**

13.

Almost 18 years later U.S. Supreme Court again was presented a case involving the distinction between state and federal jurisdiction. In **New Orleans v. United States**, 35 U.S. (10 pet) **662 (1836).** The United States claimed title to property in New Orleans likewise claimed by the city. After holding that, title to the subject lands was owned by the city, the court addressed the question of federal jurisdiction and states:

" Special provisions is made in the Constitution for the cession of
Jurisdciton from the state over places where the Federal Government
shall establish forts, or other military works.  And it is only in
these places or in the territories of the United States where it can
exercise a general jurisdiction." **10 Pet. at 737**


14.


In **New York v. Miln,**, 36 U.S. (11Pet.) 102 (1837), the question
before the court involved the attempt by the city of New York to
assess penalties agaisnt the master of a ship for failure to make a
report as to the persons his ship brought to New York.  As against
the master's contention that the act was unconstitutional and that
New York had no jurisdiction in the matter, the court held:

> " If we look at the places of  its operation, we find it to be within
> the territory, and therefore, within the jurisdiction of New York.  If
> we look at the person on whom it operates he is found within the same
> territorial jurisdiction." **36 U.S. at 135**

> " **They are these:  That a state has the same** undeniable and unlimited
> jursidiction over all persons and things within its territorial limits,
> as any foreign nation, where that jurisdiction is not surrendered or
> restrained by the Constitution of the United States.  That by virtue
> of this it is not only the right, but the burden and solemn duty of a
> state, to advance the safety, happiness and prosperity of its people
> and to provide for its general welfare by any and every act of legis-
> lation which it may deem to be conductive to these ends; where the
> power over the particular subject, or the manner just stated. That all
> those powers which relate to merely municipal  legislation, or what may
> perhaps more properly be called internal police are not thus surrendered
> or restrained and that consequently in relation to these the authority
> of a state is completely unqualified and exclusive." **36 U.S. at 139**


15.


Some eight years later, in **Pollar v. Hagan**, 44 U.S. (3 How.)
212 (1845), the question of Federal Jurisdciton was once again be-

fore the court.  This case involved a contest of the title of real
property, with one of the parties claiming a right to the disputed
property via U.S. patent; the lands in question were situated in Moble,
Alabama adjacent to Moble Bay, the court held:

> " We think a proper examination of this subject will show that the
> United States never held and Municipal sovereignty, jurisdiction or
> right of soil in and to territroy of which Alabama or any of the new
> states were formed."  **44 U.S. at 221**

> " Because the United States have no Constitutional capacity to exercise
> Municipal Jurisdiction, Sovereignty or eminent domain within the limits
> of a state or elswhere, except in case which it is expressly granted."
> **44 U.S. at 228, 229**

> " Alabama is therefore entitled to the sovereignty and Jurisdiction over
> all the territory within her limits, subject to the common law."  **44 U.S.
> at 228, 229**

16.

The single most important case regarding the subject of federal
jurisdiction appears to be **Fort Leavenworth R. Co. v. Iowa**, 114 U.S.
525 (1885) 995, which set forth the law on this point of federal
jurisdiction, fully.  There the railroad company's property, which
passess through, Fort Leavenworth federal enclave was being subject
to taxation by Kansaa, and the company claimed an exemption from the
state taxation.  In holding that the company is properly taxed, the
court carefully explained federal jurisdiction within the states:

> "  The consent of the state to the purchase of lands within them for
> the special purpose named is however, essential, under the Constitution
> to the tansfer of the jurisdiction and dominion.  Where lands are acq-
> uired without such consent, the possession of the United States, political
> jurisdiction be ceded to them in some other way is simply that of an
> ordinary proprietor.  The property in that case, unless used as a means

to carry out the purposes of the government, is subject to the leg-
islative authority and control of the states equally with the property
of private individuals." **114 U.S. at 531**

### 17.

The Constitution for the United States created a government,
which has jurisdiction over certain enumerated subject matter.  It
is only in these areas that Congress can enact laws, and when they
do, the Federal Courts are to enforce the law.  But when laws do not
come from a enumerated power, the Federal Courts are to prevent the
U.S.  Government or Congress from applying them.

### 18.

The Federal Constitution prescribes what the "jurisdiction" of
the Federal Government is by the enumerated powers.  That government
can regulate foreign and interstate commerce, fix the standards of
weights and measurements, establish uniform laws on bankruptcies,
coin money and provide for the punishment of counterfeiting of coins
and securities of the United States, protect the arts and sciences
by copyrights and patents, punish for piracies and felonies commit-
ted on the high seas, raise and support an army and navy, and lay
and collect taxes by appointment, and indirect taxes by exercise,
duties, or imports.

### 19.

This is about the extent of the legitimate jursdiction of the
Federal United States Government.  It is only in these areas, **supra**,
that a "crime (or offense) against the Federal United States" can
exist, and this is so only when Congress actually passes a Law in
one of these areas:

But an act committed within a State for good or a bad purpose, or whether with honest or a criminal intent, cannot be made an offense against the United States, unless it has some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States of America.

20.

**United States v. Fox**, 95 U.S. 670, 672 (1877). [T]he courts of the United States, merely by virtue of this grant of judicial power, and in the absence of legislation by Congress, have **no** criminal jurisdiction whatsoever. The criminal jurisdiction of the Courts of the United States is wholly derived from the Statutes of the United States. **Manchester v. Massachusetts**, 139 U.S. 240, 262 (1890); **United States v. Flores**, 289 U.S. 137, 151 (1932). Acts of Congress, as well as the Constitution, must generally unite to give jurisdiction to a particular court. **United States v. Bedford**, 27 Fed. Cas., p.91 103, Case No. 15,867 (1847).

21.

The Federal Courts only have jurisdiction in matters involving an "offense against the United States," and nothing can be an offence against the United States unless it is made so by Congressional Act pursuant to the U.S. Constitution. There is no other source from which Congress can get authority to make law, including the **Common Law.** Thus it has been said that, "There is no Federal Common Law."

22.

But the better way of stating this is to say, "There are no Common Law Offenses (or crimes) against the United States." **United States v. Britton**, 108 U.S. 199, 206 (1882); **United States v. Eaton**, 144 U.S. 677, 687 (1891); **United States v. Gradwell**, 243 U.S. 476, 485 (1916); **Donnelley v. United States**, 276 U.S. 505-511 (1927);

///// - 13  Memo. of Law with Incorporated Points and Auth. - N

**Jerome v. United States**, 318 U.S. 101, 104 (1942); **Norton v. United States**, 92 Fed.2d 753 (1937).  In other words, the Common Law is not a source for criminal jurisdiction as it is in the States. **United States v. Grossman**, 1 Fed.ed 941, 950-51 (1924).

23.

By "jurisdiction" is meant the authority of the Federal Courts to hear and decide a matter.  Thus it is even more correct to say that, "The Federal Courts have no jurisdiction of Common Law offenses, and there is no jurisdiction of Common Law offenses, and there is no abstract pervading principal of the Common Law of the Union under which we (Federal Courts) can take jurisdiction.  **State of Pennsylvania v. Wheeling E. Bridge Co.**, 13 How. (54 U.S.) 518, 563 (1851).

24.

If Congress tries to make a Common Law Offense a crime (such as libel, drugs, theft, burblary, murder. kidnapping, arson, rape, abortion, assault, fraud, etc.), which have no relation to an enumerated power, it would simply be an "unconstitutional" act.  Congress can declare nothing to be a crime except where it is based upon a delegated power.  Thus the only thing that can be a crime against the "United States" is that which comes from the U.S. Constitution.  These concepts were stated early on by the U.S. Supreme Court:

> In relation to crimes and punishments, the objects of the delegated power of the United States are enumerated and fixed.  Congress may provide for the punishment of counterfeiting the securities and current coin of the United States, and may define and punish piracies and felonies committed on the high seas, and offenses against the

Art. §8 ***, but  there is no reference to a Common Law authority. Every power is [a] matter of definite and positive grant; and the very power that are granted cannot take effect until they are exercised through the medium of law.  The **United States v. Worrall**, 2 Dall. (2. U.S.) 384, 391 (1798).

25.

A Constitution is not to be  made to mean one thing at one time, and another at some subsequent time when the circumstances have so changed, as perhaps to make a different rule in the case desirable. A principal share of the benefit expected from written Constitution would be lost if the rules they establish were so flexible as to bend to circumstances or be modified by public opinion.  [A] court or legislature which should allow a change in public sentiment to influence it in giving to written constitution a construction not warranted by the intention of its founders, would be justly chargeable with reckless disregard of Officail Oath (28 **U.S.C.** §453–18 **U.S.C.** §1621) and public duty; and if its course could become a precedent these instruments would be of little avail.  What court is to do, therefore, is to declare the law as written.  **T.M. Cooley, A Treatise on the Constitutional Limitation**, 5th Ed., pp. 54,55., rather than be swayed by polictical ambition and the unlawful unsurpation of police powers. Chief Justice, John Marshall stated:

> " We [Judges] have no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given.  The one or the other would be treason to the Constitution." **Cohens v. Virginia**, 6 **Wheat.** (19 U.S.) 264, 404 (1821).

26.

The district court erred in not determining jurisdiction prior to entertaining the cause.

///// - 15   Memo. of Law with Incorporated Points and Auth. - N

a.    Standard of Review

The court's duty to resolve the jurisdiction of the court, regardless of who brings the action, the court must make a legal finding as to its authority to take venue and jurisdiction, before the court moves to entertain the cause before it.  See, **20 Am Jur 2d §60, 377**

§60    **Power and Duty to Determine Jurisdiction**

A Court has the power and duty to examine and determine whether or not it has jurisdiction over the subject matter presented to it, and its determination being subject, of course, to appellate review.  This question should be considered by the court before it looks at other matters involved in the case, such as whether the parties are properly before the court. It may, and must do this on its own motion, without waiting for the question of its jurisdiction to be raised by any of the parties involved in the proceedings.

§62    **Jurisdiction as dependent on application for relief**

The general rule is that the court cannot adjudicate a controversy on its own motion; it can do so only when the controversy is presented to it by a party, and only if the case is presented to it in the form of a proper pleading.  A court has no power either to investigate or to initiate proceedings.  When a statute prescibes a mode of acquiring jurisdiction, that mode must be followed or the proceedings and resulting judgment will be void and the judgment subject to collateral attack.

§65    **Effect of Lack of Jurisdiction**

" THE GENERAL RULE IS THAT PROCEEDING CONDUCTED OR DECISIONS MADE -- BY A COURT ARE LEGALLY VOID WHEN THERE IS AN ABSENCE OF JURISDICTION OVER THE SUBJECT MATTER.

A COURT DEVOID OF JURISDICTION OVER THE CASE CANNOT MAKE

A DECISION IN FAVOR OR EITHER PARTY, CANNOT DISMISS THE COMPLAINT
FOR FAILURE TO STATE A CLAIM AND CANNOT RENDER A SUMMARY JUDGMENT,
AS A DECISION WOULD BE ON THE MERITS OF THE ACTION. **IT CAN ONLY
DISMISS THE CASE FOR WANT OF JURISDICTION.** HOWEVER, A COURT CAN SET
ASIDE ORDERS IT MADE BEFORE THE WANT OF JURISDICTION WAS DISCOVERED,
AND A JUDGMENT BY A COURT WITHOUT JURISDICTION OVER SUBJECT MATTER
CAN BE SET ASIDE AND VACATED AT ANY TIME BY THE COURT THAT RENDERED
IT." (In Part)

27.

The Petitioner asserts that the District Court lost its juris-
diction, once it failed to determine jurisdiction to hear this case
at bar <u>before proceeding with sentencing and/or trial.</u>

28.

The question of challeging the court, and the United States
jurisdiction, was never waived by this Petitioner, it is well settled
in the law that when jurisdiction of the court and of the United States
is challenged, thus **"Onus Probandi is the actor."** Onus Probandi
burden of providing the burden of proof, "The strict meaning of the
Onus Probandi," is that, if no evidence is adduced by the party on
whom the burden is cast, the issue must be found against him, **Davis v.
Rogers, 1 Houst (del.) 44.** "Where jurisdiction is challenged it
must be proved," **Hagen v. Lavine, 415 U.S. 528 (1974).** Because it
is not sufficient that jurisdiction of the United States Courts may
be inferred argumentatively from averments in the pleadings it fol-
lows that the necessary factual predicate may not be gleaned from the
briefs and arguments themselves; this principal of federal jurisdiction
applies whether  that case is at the trial stage or at the appellate
stage.

29.

The Petitoner asserts that the court and government has not been granted jurisdiction through the Constitution of the United States of America, to adjudicate matters beyond the legislative jurisdiction of the United States. The courts and the government have failed to offer proof, or make findings and conclusions of law, as to the jurisdiction in the above alleged criminal action. "A court cannot proceed at all in any case without jurisdiction but must announce the fact and dismiss the cause." See, **Ex Parte McCardle**, 7 Wall 506, 19 L.Ed. 264. Before considering each of the standings theories, it is appropriate to restate certain basic principals that limit the power of every Federal Court. Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and statutes enacted by Congress pursuant thereto. **e.q. Marbury v. Madison**, 1 Cranch 137, 173-180, 2 L.Ed. 60 (1803). For that reason, every Federal Appellate Court has a special obligation to "satisfy itself not only of its jurisdiction, but also that of the lower courts in a cause under review," even though the parties are prepared to concede it. **Mitchell v. Maurer**, 293 U.S. 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934) See, **Judice v. Vail**, 430 U.S. 327 331, 332 51 L.Ed.2d. 376, 97 S.Ct. 1211 (1977)(standing), "and if the record discloses that the lower courts was without jurisdiction (such as in this case) this court will notice the defect, although the parties make no contention concerning it." See, **Bender v. Williams Port Areas School District**, 475 U.S. 534, L.Ed.2. 501, 106 S.Ct. 1326. When the lower Federal Court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining

///// - 18  Memo. of Law with Incorporated Points and Auth. - N

the suit. See, **United States v. Corrick**, 298 U.S. 435, 440, 80 L.Ed. 1263, 56 D.Vy. 829 (1936). See also e.q., **United States v. Mata**, 449 U.S. 539, 547-548 n.2, 66 L.Ed. 722, 101 S.Ct. 764 (1981), **City of Kenosha v. Bruno**, 412 U.S. 507, 511 37 L.Ed.2d, 109, 93 S.Ct. 222 (1973), **Clark v. Paul Gray, Inc.**, 306 U.S. 583, 588, 83 L.Ed. 1001 59 S.Ct. 744 (1939), **St. Paul Mercury Indemnity Co. v. Red Cab Co**, 303 U.S. 283, 287-288 n.10 82 L.Ed. 845 58 S.Ct. 586 (1936). This obligation to notice defects in a court of appeals, subject matter jurisdiction, assume a special importance, when a constitutional question is presented. In such cases we have held strictly to the standing requirements to ensure that out deliberations will have benefit of adversary presentation and full development of the relevant facts. The court must be mindful that the powers of the legislature are defined and limited and that those limits may not be mistaken of forgotton, the Constitution of the United States of America has been written indeed this is the very essence of the judicial duty. See, **Marbury v. Madison**, 5 U.S. 137, 176-178, 1 Cranch 137 (1803).d See, also, **Bell v. Maryland**, 378 U.S. 266, 224 (1964)(Douglas J. Concurring). " A district court are courts limited jurisdiction, which has only powers conferred on it by this Title under 28 U.S.C.A. Article III, and cannot assume jurisdiction." See, **Stanard v. Olesen**, 74 S.Ct768 (1954) also, **McNutt v. G.M** , 56 S.Ct. 789, 80 L.Ed. 1135., and **Thomson v. Gaskiel**, 62 S.Ct. 573, 83 L.Ed. 111. It is clear that federal jurisdiction does not rest in federal statutes that do not invest exclusive jurisdiction. Neither statute governing courts authority not the statute governing the charged crime invest exclusive authority of the subject matter to justify the abrupt (police power) removal of this Petitioner from the State jurisdiction, by the Federal

Government.  The Supreme Court in **Housenbaum v. Bauer,** 120 U.S. 450
(1887), searching the language of the statute to see if jurisdiction
is conferred by a statute stated:

> " Here we are bound by statute and not by States alone, but by an
> act of Congress, which obliges us to follow the State statute and
> State practice.  The Federal courts are bound hand and foot, and
> are compelled and, obliged by the federal legialature to obey the
> State law."

30.

The Petitioner contends that such rules prevail where it appears
from the record that the court was without jurisdiction, of either
person or the subject matter.  For the record, where it appears from
the _record_ that the court did not have jurisdiction of the person or
the subject matter, there is not conclusive presumption to preclude
an injury into the fact and to prevent a declaration of the invalid-
ity of the judgment.  A record, which affirmatively shows want of
jurisdiction, is of its self, **conclusive as that fact.**

31.

Moreover, a district court judge may and must check for the courts
jurisdiction to proceed, in the pleading proceeding.  He must do
this on his own motion without waiting for the question of lawful
jurisdiction to be raised by any of the parties involved in the
proceedings.  He is charged to know that the court proceedings con-
ducted absent jurisdiction over the subject matter are legally void
and subject to collateral attack.  See, **46 American Jurisprudence
2d.  Judgment §26.**  As a district court judge charged with knowledge
that jurisdiction is the authority to hear and determine a specific
case within a class over which the court has subject matter juris-

diction. Also awareness that his court is subject to **Territorial limitation and cannot extend** the jurisdiction authority which comes pursuant to an act of Congress and under which behalf the court functions. Knowing that the jurisdiction of his court is limited, and can be further limited by constitutional or statutory provisions to only part of the territory of the sovereignty to which the court belongs. See, **American Jurisprudence 2d. Courts §115**.

32.

The district court of Petitioner's conviction is one limited and special original jurisdiction, its action must be confined to the particular cases, controversies, and parties over which the constitution and the laws have authorized it to act; any proceedings without the limits prescribed is Coran Non Judice and its actions a nullity. See, **State of Rhode Island et. al. v. Commonwealth of Mass. 37 U.S. 657 (1938)**. The statute designating the Federal Government charges, that if a crime does not authorize concurrent jurisdiciton doctrine authorize concurrent jurisdiction. See, **Adams v. United States, 87 L.Ed. 1421**. The jurisdiction to detemine jurisdiction doctrine authorizes courts to issue ancillary orders while determining thier own jurisdiction, and to punish as criminal contempt, the violations of such others, even though it may later be determined that the court lacks jurisdiction over the proceedings. When a court assumes jurisdiction but later discovers that it has no subject matter jurisdiction, the court must take the appropriate action, although it acted in accordance with its previous belief that it had jurisdiction. See, **American Jurisprudence 2d. Courts §60 page 377** Jurisdiction to render a judgment in a particular case or against particular persons may not be presumed where the record itself shows

jurisdiction has not been acquired.  See,  **Old Wayne Mut Life Asso.**
**v. McDonough**, 204 U.S. 8, 51 L.Ed.345, 27 S.Ct. 236.  Hence a fact
connected with jurisdiction to render a judgment may not be in the
face of statements to the contrary in the record.

## FAILURE TO ESTABLISH FEDERAL INTERSTATE COMMERCE NEXUS

33.

Defense counsel was ineffective by failing to raise or challenge
the governments lack of Federal Subject Matter Jurisdiction over the
alleged prohibitive acts charged against the petitioner.

34.

That, **defense counsel failed ab initio** to raise or challenge
that the Federal Statutory Provisions under which the Petitioner is
charged failed to contain language of an interstate commerce nexus.
the enumerated subsection under which the Petitioner is unlawfully
incarcerated and detained of his Liberty, possess no language which
could be construed as importing, interposing or incorporating a
Commerce Nexus.  Thus, the language of the statute does not grant
federa subject  matter jurisdiction, nor grant formal notice to the
accused party that an alleged violation of **18 USC §922(g) and §924(e)**
also invokes an uncharged violation of the federal Interstate Com-
merce statute, even though no prohibitive acts moved beyond the borders
of the sovereign state or across state line or international borders.
The Federal Governement does not have a general police power, thereby
the legitimate application of **Title 18 USC §922(g)** and **§924(e)** may
only be applied if ....

connected to an alleged violation of the Interstate Commerce statute.

35.

**Stirone v. United States**, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d. 252 (1960) at 857. The Supreme Court stated that, " The essential element was the allegation of an effect on Interstate Commerce which provided the court with (subject matter) jurisdiction" over the alleged prohibitive acts. Where the instant matter is concerned, the government has failed ab initio to establish that the prohibitive conduct of the petitioner, moved beyond the border of the sovereign state, thus in the clear absence of a commerce charge, the government failed to establish Federal Subject Matter jurisdiction over the alleged offense.

36.

Under our federal system, the "States possess primary authority for defining and enforcing the criminal law." See, **Brecht v. Abrahamson**, 507 U.S. 123 L.Ed.2d 353, 113 S.Ct. 1710 (1993),quoting: **Engle v. Isaac**, 456 U.S. 107, 71 L.Ed.2d 783, 102 S.Ct. 1031, 162 ALR 1330 (1945)(plurality opinion) "our National Government is one of delegated powers alone. Under our federal system the administration of criminal justice rests with the states except as Congress, acting within the scope both delegate powers has created offenses against the United States." When Congress criminalizes conduct already denounced as criminal by the State it affects a change in the sensitive relation between federal and state criminal jurisdiction. **United States v. Unmans**, 410 U.S. 396 441-412, 35 L.Ed.2d 379, 93 S.Ct. 1007 (1973). quoting, **United States v. Bass**, 404 U.S. 336, 349 30 L.Ed.2d 488, 92 S.Ct. 515 (1971). It's obvious the government would have to acknowledge that 18 USC §922(g) and §924(e) displaces state policy.

///// - 23   Memo. of Law with Incorporated Points and Auth. - N

kin that its prohibitions is being used in every State. **18 USC §922(g) and §924(e),** is now being used outside its scope of intended use by inappropriately overriding State law. By imposing higher penalties and establishing mandatory penalties for the same offenses that the State already charges. The policies reflected in these provisions could legitimately be adopted by the States, but they should not be imposed upon the States by Congress. By the government's use of these two statutes outside its scope and its intended use two we have a system that can punish the same act by different indiviuals with different and more selective punishment. Thus, the abuse-mentioned, defendant in the case also charges the government was selective by going outside its jurisdiction which was clearly spelled out by the 99th Congress 2d Session, of the Federal Statutory Provision under which the Petitioner is alleged to have violated the act in question to determine, whether it applies solely within the jurisdiction of the United States. Analysis of the operative sections of the act, particularly the section at issue herein, clearly reveals that there is nothing, which idnicates that the act applies anywhere but within United States territories and enclaves. There simply is no statutory language expressly stating that the act applies "extra jurisdiction-ally." Further, the Federal Statutory Provisions which are an issue **(§2113(a)(d) of Title 18)** totally fail to mention or refer to "in-terstate commerce" or otherwise connect the provisions of this act to congressional interstate commerce powers. This is particulary apparent from a review of Section §922(g) and §924(e) mention nothing reference to interstate commerce. It should be noted that in other criminal acts Congress statutorily bases such acts upon it's "inter-state commerce" powers: See, 18 US.C. Section 659, 660, 842, 844, 875, 922, 1231, 1301, 1343, 1365, 1761, 1951, 1953, 1962, 1992, 2101,

2251, 2312, 2316, 2317, 2421, and 2422.

37.

The Petitioner asserts prosecutorial misconduct and plain error, 52(b) F.R.C.P., in that the application was not within the scope of Rule 7(c)(1), F.R.C.P. to the indictment in which was an amendment to cure the jurisdiction requirement; the indictment failed to explicitly, allege a (nexus) to commerce. See, **United States v. Knowles**, 29 F.3d 947, 952 (5th Cir. 1994).

38.

The Petitioner stands firm on his assertion that he was highly prejudiced by the prosecutor, not qualifying the jurisdiction nexus in the statute, to the Grand Jury. The Second and Third Circuit is on record as expressing the view that "when the word or phrase is used in the Sect. of the "Act" more than once, and the meaning is clear as used in one place." **Meyer v. United States**, 175 F.2d 45, 47 (2nd. Cir. 1949), quoting, **Lewellyn v. Nunez**, 573 F.2d 769 (2nd Cir. 1978), and, **C.I.R. v. Ridgeway's Estates**, 291 F.2d 257 (3rd Cir. 1961). It is elementary principal of criminal pleading, that where the definition of an offense, whether it be common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the specifics it must descent to a particulars, **United States v. Crikshank**, 92 U.S. 542, 558, 23 L.Ed. 588, 593. An indictment not framed to appraise the defendant with reasonable certainty, of the nature of the accusation against him, and it's jurisdiction to sustain those accusations is defective, although it may follow the language of the statute. See, **United States v. Simmons**, 96 U.S. 360, 362, 24 L.Ed. 819, 820. In as in-

dictment upon statue, it is not sufficient to set forth the offense in the words of a statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. See, **United States v. Carll**, 105 U.S. 611, 612, 26 L.Ed. 1135, certainly the jurisdictional nexus, constitutes one of the elements. Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the fact and circumstances as well inform the accused of the specific offense, coming under the gerneral description with which he is charged, (an indictment that fails to state its jurisdistion nexus in the pleadings or statute, certainly would not be informing the accused of the above provisions). For similar views see, **United States v. Hess**, 124 U.S. 483, 487, 31 L.Ed. 516, 518, 8 S.Ct. 543; **Blitz v. United States**, 153 U.S. 308, 315, 38 L.Ed. 725, 727, 14 S.Ct. 924; **Keck v. United States**, 172 U.S. 434, 437, 43 L.Ed. 505, 507, 19 S.Ct. 254; **Morissette v. United States**, 246, 270 note 30, 96 L.Ed. 288, 304 S.Ct. 240, cf. **U.S. v. Petrillio**, 332 U.S. 1, 10, 11, 91 L.Ed. 1877, 1884, 1885, 67 S.Ct. 1538. That these basic principals of fundamental fairness retain their full vitality under modern concepts of pleading and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure. In this case at bar, a mere citation (such as the government used in this case) to the applicable statute does not give the defendant notice of the nature of the offense. An indictment that must rely on a statutory citation does not fully, directly, and expressly, without any uncertainty or ambiguity set forth all the elements (such as jurisdiction) necessary

to constitute the offense intended to be punished (or to sustain the charges).  See, **Hamling v. United States**, 418 U.S. 87, 117, 94 S.Ct. 1887, 2907-08, 41 L.Ed.2d. 590 (1974).  Furthermore, a statutory citation does not ensure that the Grand Jury has considered and found all essential elements such as (jurisdiction) of the offense charged. It therefore fails to satisfy the Fifth Amendment guarantee that no person be held to answer for an infamous crime unless of indictment of a Grand Jury.  See, **United States v. Pupo**, 841 F.2d 1235 (4th Cir. 1988) quoting, **United States v. Hooker**, supra. at 841 F.2d 1225 (4th Cir. 1988).  As stated in **Hooker**, when an indictment fails to include as essential element of the offense charged, it thereby fails to charge any federal offense and conviction under the indictment may not stand.  A Grand Jury in order to make the ultimate determin- ation, must neceassarily determine, what gives the government jur- isdiction to sustain, or bring these charges.  To allow the prosecutor, or the court to make a subsequent guess as to what was in the minds of the Grand Jury at the time they returned the indictment  would deprive the defendant of a basic protection which guarantee of inter- vention of a Grand Jury was designed to secure.  For a defendant could then be convicted on the basis of facts not found by a Grand Jury or perhaps, not even presented to the Grand Jury which indicted him such as this case now, before this court, the jurisdiction nexus needed and required certainly was never presented to the defendant's Grand Jury.  For similar views see, **Orfield Criminal Procedure from Arrest to Appeal 243**. This underlying principal is reflected by the settled rule in the federal courts that an indictment may not be amended excpet by resubmission to the Grand Jury unless the charge is merely a matter of form, **Ex Parte Bain**, 121 U.S. 1, 30 L.Ed. 849,

7 S.Ct. 781; <u>United States v. Norris</u>, 821 U.S. 619, 74 L.Ed. 1076,

50 S.Ct. 424, <u>Stirone v. United States</u>, 361 U.S. 212, 4 L.Ed.2d., 80

S.Ct. 270. If it lies within the province of a court to amend an

indictment to suit its own notion of what ought to have been, when

such allegation of a commerce nexus is not submitted to the Grand

Jury, neither the government or court has the authority to amend an

indictment to incorporate the crucial missing element. The great

importance which the common law attaches to an indictment by a Grand

Jury, as a prerequisite to a prisoner's trial for a crime and without

which the Constitution says no person shall be held to answer, may

be frittered away until its value is almost destroyed. any other

doctrine would place the rights of the citizens which were intended

to be protected by this Constitutional provision, at the mercy or

control of the court or prosecuting attorney; for if it be once held

that the charges can be made by the consent or the order of the court

in the body of theindictment as presented by the Grant Jury, and the

prisoner can be called upon to answer to the indictment as thus

changed, the restriction which the Constitution places upon the power

of the court, in regards to the prerequisite of an indictment, in

reality no longer exists. <u>Ex Parte Bain</u>, supra (121 U.S. at 10. 13).

This court must be aware that "the very purpose of the requirement

that a man be indicted by a Grand Jury is to limit his jeopardy to

offenses charged by a group of his fellow citizens acting independ-

ently of either prosecuting attorney of judge." See, <u>Stirone v.</u>

<u>United States</u>, supra. (361 U.S. at 218).

## LACK OF ADMINISTRATIVE AGENCY JURISDICTION
## OVER LOCUS IN QUO

### 39.

Defense counsel was ineffective by failing to raise or challenge that no amendment to the Constitution can be found to provide for the unbridled, nationwide application of the Federal Statutory Provisions under which the Petitioner is charged.

### 40.

The Constitution for the United States created a government which has jurisdiction over certain enumerated subject matter. It is only in these areas that Congress can enact laws, and when they do, the Federal Courts are to enforce the law. But when laws do not come from an enumerated power, the Federal Courts are to prevent the U.S. Government or Congress from applying them.

### 41.

The Federal Constitution prescribes what the "jurisdcition" of the Federal Government is by the enumerated powers. That government can regulate foreign and interstate commerce, fix the standards of weights and measurements, establish uniform laws on bankruptcies, coin money and provide for the punishment of counterfeiting of the coins and securities of the United States protect the arts and sciences by copyrights and patents, punish for piracies and felonies committed on high seas, raise and support an Army and Navy, and lay and collect direct taxes by apportionment, and indirect taxes by exercise, duties, or imports.

42.

This is about the extent of the legitimate jurisdiction of the Federal United States Government. It is only in these areas, **supra**, that a "crime (or offense) against the Federal United States" can exist, and this is so only when Congress actaully passes a Law in one of these areas. But an act committed within a State, whether with honest or criminal intent, cannot be made an offense against the United States unless it has some relation to the execution of a power of Congress, or to some matter within the jurisdiction the United States. **United States v. Fox**, 95 U.S. 670, 672 (1877). [T]he courts of the United States, merely by virtue of this grant of judicial power, and in the absence of legislation by Congress, have no criminal jurisdiction whatsoever. The criminal jurisdiction of the courts of the United States is wholly derived from the statutes of the United States. **Manchester v. Massachusetts**, 139 U.S. 240, 262 (1890): **United States v. Flores**, 289 U.S. 137, 151 (1932). Acts of Congress, as well as the Constitution, must generally unite to give jurisdiction to a particular court. **United States v. Beford**, 27 Fed. Cas., pg. 91, 103 Case No. 15,867 (1847).

43.

The Federal Courts only have jurisdiction in matters involving an "offense against the United States," and nothing can be an offense against the United States unless it is made so by Congressional Act pursuant to the U.S. Constitution. There is no other source from which Congress can get authority to make Law, including the Common Law. Thus, it has been said that, "There is no Federal Common Law."

44.

But the better way of stating this is to say, "There are no

Common Law offenses (or crimes) against the United States." **United States v. Britton**, 108 U.S. 199, 206 (1882); **United States v. Eaton**, 144 U.S. 677, 687, (1897); **United States v. Gradwell**, 243 U.S. 476 485 (1916); **Donnelley v. United States**, 276 U.S. 505, 511 (1927); **Jerome v. United States**, 318 U.S. 101, 104 (1942); **Norton v. United States**, 92 Fed.2d 753 (1937). In other words the Common Law is not a source for criminal jurisdiction as it is in States. **United States v. Grossman**, 1.Fed.2d 941, 950-51 (1924).

### 45.

By "jurisdiction" is meant the authority of the federal courts to hear and decide a matter. thus, it is even more correct to say that, "The federal courts have no jurisdiction of Common Law offenses, and there is no jurisdiction of Common Law offenses, and there is no abstract pervading principal of the Common Law of the Union under which we (federal courts) can take jurisdiction." **State of Pennsylvania v. The Wheeling E. Bridge Co.**, 13 how. (54 U.S.) 518, 563 (1851).

### 46.

If Congress tries to make a Common Law offense a crime (such as Libel, Drugs, Theft, Burglary, Murder, Kidnapping, Arson, rape, Abortion, Fraud, etc.), having no relation to an enumerated power it would simply be an "unconstitutional" act. Congress can declare nothing to be a crime except where it is based upon a delegated power. Thus, the only thing that can be a crime against the "United States" is that which comes from the U.S.Constitution. These concepts were stated early on by the U.S. Supreme Court.

> " In relation to crimes and punishments, the objects of the delegated
> powers of the United States are enumerated and fixed. Congress may

provide for the puishment of counterfeiting the securities and current coin of the United States, and may define and punish piracies and felonies committed on the high seas, and offenses against the law of nations. **Art. §8** but there is no reference to a Common Law Authority.  Every power is [a] **matter** of definite and positive grant; and the very powers that are granted cannot take effect until they are exercised through the medium of a law. **The United States v. Wortall**, 2 Dall. (2 U.S.) 384, 391 (1798).

47.

A Constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances have so changed, as perhaps to make a different rule in the case seem desirable.  A principal share of the benefit expected from written constitutions would be lost if the rules they establish were so flexible as to bend to circumstances or be modified by public opinion.  [A] court of legislature which should allow a change in public sentiment to influence it in giving to a written consitution a construction not warranted by the intention of its founders, would be justly chargeable with reckless disregard of the official oath. (28 U.S.C. §453 - 18 U.S.C. §1621) and public duty; and if its course could become a precedent, these instruments would be of little avail. What a court is to do, therefore, is to declare the Law as written. **T.M Cooley. A Treaties on the Constitutional Limitations**, 5th Ed., **pp.54, 55**, rather than be swayed by political  ambition and the unlawful usurpation of police powers.  Chief Justice, John Marshall stated:

> We [Judges] have no right to decline the exercise of jurisdiction which is given, that to usurp that which is not given.  the one or the other would be **Treason** to the Constitution. **Cohens v. Virginia**, 6 Wheat (19) U.S. 264, 404 (1821).

48.

The United States Code was approved by an Act of Congress on June 30, 1926 (44 Stat. Part I). The code is assembled and revised under the supervision of "The Committee on the Judiciary of the House of Representatives." The main work of revision is done by a subcommittee or office of this committee called "the Office of the Law Revision Counsel of the House of Representatives." It consists of an appointed supervisor, some memebers of Congress, some volunteer Lawyers, and persons form West Publishing of St. Paul, Minnesota.

49.

When the U.S. Code was first published, it never was stated to be the official laws of the United States. Rather, it was stated that the Code was a "Restatement" of law, or was only "prima facie evidence of the laws of the United States." On this matter the court stated:

> The United States Code was not enacted as a statute, nor can it be construed as such. It is only a prima facie statement of the statute law.... If construction is necessary, recourse must be had to the original statutes themselves. **Five Flages Pig Line Co. v. Dept. of Transportation**, 854, F.2d 1438, 1440 (1988); **Stephan v. United States**, 319 U.S. 415, 426 (1943)' **44 Stat Part 1, preface; Murrell v. Western Union Tel. Co.**, 160 F.2d 787, 788, (1947); **United States v. Mercur Corp.**, 83 F.2d 178, 180 (1936).

50.

this tells us that the United States Code, as originally established, was not on an equal plain with the "original statutes" or the **Statutes at Large**. thus, the Code was not **True Law**. With the state of regular use of the U.S. Code, numerous problems arose in that it contained mistakes, errors and inconsistencies as compared

to the Statutes at Large    Thus, in 1947, Congress enacted several
of the Titles into "positive law," such as the Act:   "To codify and
enact into positive law, **Title 1 of the United States Code**," In doing
so they devised some new terminology; which is set out under **61 Stat.**
633, 638-644; 1 U.S.C. §204(a).

51.

Look back at the cases cited, which state that the criminal jur-
isdiction of the United States exists only by Acts of Congress pur-
suant to the Constitution.   In the nature of a question of law, if a
federal court were asked whether the Code cited in an indictment is
an Act of Congress, the court could not rightfully say it is, because
the Code citation contains no congressional enacting clause for that
citation as required  by **61 Stat.** 633, 634, §101.   If no such enacting
clause appears on the face of the law, it is not an act of Congress
and **no** criminal jurisdiction exists wihtout a bona fide Act of Cong-
ress.   The argument in such a case is that the indictment does not
set forth a case arising under the Constitution, as there is no Act
of Congress with a duly required enacting clause.   Thus, there is **no**
subject matter jurisdiction pursuant to the federal judicial power
defined in the nature of **Article III, §2 of the Federal Constitution.**

52.

No where does it say in the Code, or in the pronouncements by
Congress or the Courts, that the laws in the U.S. Code are Acts of
Congress.   In fact, the Code is always regarded as something differ-
ent from the **Statutes at Large.**

> **But no one denies that the official source to find United**
> **States law is the <u>Statutes at Large</u> and the Code is only prima**
> **facie evidence of such laws.**

54.

An invalid, unconstitutional or non-existent statute affects the validity of the "charging document," that is, the complaint, indictment or information.  If these documents are void or fatally defective, there is no subject matter jurisdiction since they are the basis of the court's jurisdiction.  when an accused-party is indicted under a not-yet-effective or unenacted statute, the charging documents is void.

55.

Congress has no general power to enact police regulations oper-ative within the territorial limits of a State.  **Slaughter-House Cases, 83 U.S. 36**; **United States v. Dewitt, 76 U.S. 41**; **Gibbons v. Ogden, 22 U.S. 1**; and it cannot take this power from the states or attempt any supervision over the regulations of the States established under this power, **Keller v. United States, 213 U.S. 138.**  The exercise of the police power by a state is beyond interference by the Federal Government.  See also, **People v. Godfrey, 17 Johns 225, at 233 (N.Y. 18181)**; **United States v. Bevans, 16 (3 Wheat) 336 (1818)**; **Adams v. United States, 319 U.S. 312 (1943)**, and **Caha v. United States, 152 U.S. 211, 215 (1894)**, Supreme Court authorities, which contain lan-guage that leaves no room for misinterpretation of mis-application.

## UNPROMULGATED REGULATORY STATUTES

56.

**defense counsel was ineffective by failing to raise that there are no public implementing regulations in the Code of Federal Reg-ulations (CFR) for the Federal Statutory Provisions under which the petitioner is charged.**

57.

That, defense counsel failed ab initio to raise or challenge the fact that the Federal Statutory Provisions under which the Petitioner is charged are unenacted by Congress, unpromulgated in the Federal Register and possess no public implementing authorities in the Federal Code of Regulation.  The Petitioner would like the record to reflect that the Federal Statutory Provision under which he is charged, are in fact <u>commercial regulatory statutes</u> which have not promulgated in the Federal Register or the Code of Federal Regulations, as required under 44 U.S.C. §1505, et seq., and 5 U.S.C. §601. Therefore, it is arguable that this court has jurisdiction to adjudicate sanctions for violation of Unpromulgated Regulatory Statutes. The petitioner thus advances with supporting authorities that no documentation can be shown that the enumerated subsections under which the accused-party is charged, have published regulations, thus these particular Federal Statutory Provisions <u>18 USC §922(g) and §924(e)</u>, lack the force and effect of Law, when mis-applied beyond the parameters of Rule 54(c) - Acts of Congress, of Federal Rules of Criminal Prosedure.

58.

In <u>**Foley Brothers v. Filardo**</u>, **336 U.S. 281 (1949)**, the high court stated, "It is well established as a principal of law, that all federal legislation applies only within the territorial jurisdiction of the (federal) United States unless a contrary intent appears."  In order for a contrary intent to be facilitated, delegations of authority and implementing regulations must be published in the Federal Register.

59.

Fortunately, there is a readily available method for discerning which Statute at Large, and which Statute contained within the 50 Titles of the United States Code, possess either restricted appli- cation, or general applicability to the several States and the pop- ulation at large.  This method is through consulting the Parallel Tables of Authority and Rules which begins at page **709 of the 1998 Index Volume to the Code of Federal Regulations**.  Its authoirty is located at **1C.F.R.§8.5(a)**.

60.

The **Administrative Procedures Act,** located at **5 U.S.C. §§552 ET SEQ.**, and the Federal Register Act, located at **44 U.S.C. §1505 et seq.**, provide the means for determining which Statutes in any given act of Congress are applicable, within federal areas, and which Stat- utes have "general" applicability within the territories, enclaves, and insular possessions, belonging to the federal United States.  At §1505(a)(1), of Title 44, of the United States Code, it is found that if a Statute is not published in the Federal Register, the application of the statutory provision is restricted to federal agencies, or per- sons acting in their capacity as officers, agents or employees of the federal governement.

61.

Positive Law is the irrefutable Law of the United States of America, which has withstood the test of time.  However, when federal statutory provisions are not duly and properly promulgated in accord- ance with the law, then such Statutes lack the force of law, and may not be applied capriciously or arbitrarily.

62.

In **Hotch v. United States**, 212 F.2d. 280 (9th Cir. 1954), at

p.283, the court stated:

> " Under our system of law, no act is punishable as a crime unless
> it is specifically condemned by the Common Law or by a statutory
> enactment of the Legislature (22 C.J.S. Crim. Law, see 17).
> Therefore, the Administrative Procedure Act and the Federal Register
> Act must be read as a part of every Congressional delegation of
> authority unless specifically excepted.  Those acts require public-
> ation, irrespective of actual notice, as a prerequisite to the
> "issuance" of a regulation making certain acts criminal.  If certain
> acts have not been made crimes by duly enacted law, the knowledge of
> their contemplated administrative proscription cannot subject the
> informed person to criminal prosecution.  **While ignorance of the law
> is no defense, it is conversely true that a law which has not been
> duly enacted into positive law, is not a law of general applicability
> and therefore, a person who does not comply with its provisions cannot
> be guilty of any crime.**"

63.

In **Wei v. Robinson**, 246 F.2d 739 (7th Cir. 1957). cert. den. **78**

**S.Ct. 144, 355 U.S. 879**, the Supreme Court stated, "Contents of the

Federal Register and the Code of Federal Regulations are **prima facie**

**evidence** of the original text and are required to be judicially noted."

In **Wolfson v. United States**, 492 F.2d 1386, 204 Ct. Cl. 83 (1974).

"When regulations are published in the Federal Register, they give

legal notice of their contents to all who may be affected thereby."

In **Shafer v. United States**, 229 F.2d 124, cert. den. 76 S.Ct. 78,

351 U.S. 931, the Court stated, " The publication of a document in

the Federal register creates a rebuttable presumption of validity."

**Northern States Power Co. v. Rural Electrification Administration,**

248 F.Supp 616 (1965), the Court stated, "Rules by governemnt agency

of general applicability and published in accordance with the Federal

///// - 38  Memo. of Law with Incorporated Points and Auth. - N

Register Act have force and effect of Statute Law and are binding on those publishing them as well as the general public until such time as they be repealed or modified. **Fed. Reg. Act §1, et seq., 44 U.S.C.A. §301 et seq.**

64.

In **United States v. Mersky,** 361 U.S. 431, 438 (1960), the Supreme Court stated:

> " Once promulgated, these regulations called for by the statute itself have the force of law, and violation thereof incur criminal prosecutions just as if all the details have been incorporated into the Congressional language. The result is that neither the Statute nor the Regulation are complete without the other, and only together do they have any force in effect; therefore, the construction of one necessarily involves the construction of the other, and in the  context of criminal prosecutions, the rule of strict construction must be applied in the interpretation of an Administrative Regulation to which penal consequences attach under the Statute authorizing the promulgation of the regulation, as well as the construction of the statute."

65.

In **United States v. Reinis,** 794 F.2d 506 (9th Cir. 1986), the Court stated, "An individual cannot be prosecuted for violating the "Act" unless he violates an implementing regulation." See also, **United States v. Two Hundred Thousand Dollar,** 590 F.Supp 846 (S.D. Fla. 1984),   specifically stated at 1 C.F.R. §1, "All regulations must be published in the Federal Register to have general applicability and legal effect." Regulation published by the Secretary at 26 C.F.R. 601-702(ii), acknowledge the effect of failure to publish by stating, "Thus for example, any such matter which imposes an obligation and which is not so published or incorporated by reference will not adversely change or affect a persons rights."

///// -39  Memo. of Law with Incorporated Points and Auth. - N

66.

The Supreme Court stated in **United States v. Welden**, 377 U.S. 95 (1964), that, "Under 1 U.S.C. §204(A)), which provides that the United States Code establishes prima facie the laws of the United States and that when Titles of the Code are enacted into positive law, the text thereof is legal evidence of the law contained therein, the very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent.  If construction of a section of the United States Code which has not been enacted into positive law is necessary, recourse must be had in the Original Statutes themselves and a changed arrangement made by the codifier without the approval of Congress should be given no weight. **Stephan v. United States**, 319 U.S. 423 (1943; **Best Foods v. United States**, 147 F.Supp. 749, 37 Cust. Ct. 1 (1956); **Peart v. Motor Vessel Bering Explorer**, 373 F.Supp. 927 (1974)).

67.

The law provides that when implementing regulations are at variance with the statutory provisions of which are intended to promulgate that they fail to give proper notice under the due process  clause of the federal constitution of the "Fair Notice," Doctrine, set out under **United States v. Nevers**, 7 F.3d 59 (5th Cir. 1993).  Administrative regulations, in order to be valid, must also be consistent with, and not contrary to, "The statute under which they are promulgated." **United States v. Larionoff**, 431 U.S. 864, at 973, 97 S.Ct. 2150, at 2156, 53 L.Ed.2d. 48 at 56. "A regulation beyond the scope of, or our   harmony with, underlying legislation is a mere nullity." Id. at 873 n.12, 97 S.Ct. at 2156, n.12,; **Manhattan**

Gen. Equip. Co v. C.I.R., 297 U.S., at 134, <u>Neel v. United States</u>,
266 F.Supp., at 10. "To make this determination, it is necessary
for the court to square the regulations against the statute that it
purports to implement, comparing the sphere of authority of each..
<u>Western Union Teleg. Co. v. F.C.C.</u>, 541 F.2d 346, 354 (3rd Cir. 1976),
cert. den. 429 U.S. 1029 (1977). An Administrative Regulation must
be reasonably related to advancing the purpose of the enabling leg-
islation." <u>Morning v. Family Publications Services, Inc.</u>, 411 U.S.
356, 369 (1973). In the framework of criminal prosecution, unclar-
ity in the statute or a regulation issued thereunder is, enough to
resolve doubts in favor of the defendant. <u>United States v. Mersky</u>,
supra.

## <u>FATAL DEFECTS IN THE GOVERNMENTS CHARGING INSTRUMENTS</u>

### 68.

The defense counsel was ineffective by failing to raise or chal-
lenge the self-evident and self-declaring defects in the government's
charging instruments.

### 69.

The Petitioner argues that an indictment which fails to allege
all of the elements of the alleged offense is defective and must
be dismissed, where one of the elements is crucial and is in fact
in sine qua to the legitimate application of the subsequent charged
offense. The legitimate application and charging <u>18 USC §922(g) and
§924(e)</u>, of the United States Code, must be connected to an alleg-
ed violation of the Federal Interstate Commerce statute, otherwise
federal subject matter jurisdiction is missing. See <u>United States
v. Pupo</u>, 841 F.2d 1235. The Petitioner argues that an indictment

fails to apprise the accused-party of what he must be prepared to
defend against. Accordingly, an allegation of Interstate Commerce
is jurisdiction and as such is essential element in appraising the
Petitioner of the Grand Jury's authority to indict under 18 USC §922(g)
and 924(e) Title 18. See, **United States v. Young**, 730 F.2d at 224 (the
particular predicate for jurisdiction is essential element of of-
fense); **United States v. McCray**, 665 F.2d 664, 678, 679 (5th Cir.
1982). The constitutional rights of an accused are violated when
modification, at trial or by court of appeals acts to broaden the
charge contained in the indictment such modifications contradict the
very purpose of the Fifth Amendment Grand Jury requirement. See,
**United States v. Stirone**, 361 U.S. 212, 4 L.Ed.2d 252, 80 S.Ct. see
at 273 (expressing similar views). The failure of the government
to include in the indictment any charge that the Petitioner's con-
duct affected interstate of intra-state, or any commerce was not
cured by the citation of the Statutes. In the sufficiency of an
indictment it is the statement of facts in the pleadings rather than
the statutory Citation that is controlling. See, **United States v.
Wuco**, 535 F.2d 1225 (9th Cir. 1976).cert. den. 429 U.S. 978, 97 S.
Ct. 488, 50 L.Ed.2d 586 (1976) It is elementary that every ingre-
dient of the crime **must** be charged in the bill, with a general
reference to the provisions of the statute being insufficient. See,
**Hale v. United States**, 89 F.2d (4th Cir.) and **United States v. Berlin**,
472 F.2d 1002, 1007 (2nd Cir. 1973); also **United States v. Beard**,
414, F.2d 1014, 1017 (3rd Cir.). This indictment under §922(g),
and §924(e), fails to allege a nexus between Petitioner's conduct and
interstate commerce in dealing with an indictment where no alleged
commerce allegation is made. The Petitioner argues this court, should
hold that a lack of commerce allegation in the indictment, precludes

it from considering whether a conviction under **18 USC §922(g) and §924(e)**
can be sustained even if the government alleged and proved that
these offenses had a nexus to commerce.  See, **United States v. Lopez,**
**at 2 F.3d 1342,** (the holding of the 5th Cir. Court of Appeals).

70.

The federal government's failure to establish proof of other
evidence of jurisdiction or ownership over each and every geograph-
ic location in which the alleged criminal activities took place
divested the court of jurisdiction over the subject matter and man-
dates reversal.  Where the lands were never ceded to the United
States, and the locations which lie within the territorial boundaries
of the states  and not the Federal Government.  Then the Federal
Government lacks jurisdiction over any criminal activities which lie
therein.  Thus, the government's view that **§922(g)** and **§924(e),**  can
be used and applied to all crimes that occur any place, or in any
geographic location, even though the statute lacks a commerce nexus,
and the government's failure to allege any effect on commerce or
other basis for jurisdiction, and not withstanding the states sover-
eign jurisdiction over its  territory, are contrary to the Consti-
tution of the United States.  Such a position would ask this court
to infer that congressional laws may be converted to general police
power and authority, without statutory or  constitutional support
which only the States may properly possess.

71.

It is firmly established and accepted fact that federal govern-
ment's power, authority, and jurisdiction does not extend beyond the
boundaries and parameters of the  embodiment of the Federal Government
itself, i.e. "territory, lands, property owned by the Federal Gov-

ernment over which jurisdiction has been ceded by the state leg-
islature." However, the Federal Government does not have the power,
nor does the Constitution grant the power to punish persons for var-
ious other crimes over which jurisdiction is retained by the States.
Preventing and prosecuting such various crimes is much the business
of the States than the Federal Government. **Arizona v. Manypenny**,
**451 U.S. 232, 101 S.Ct. 1657.** It is of the utmost importance and
relevance to note, retain, and embellish within the mind that the
territorial jurisdiction of the United States is limited to the
Federal Enclaves. **United States v. Fessler**, **781 F.2d 384, 386 (1986).**
In the instant matter, the facts and offense alleged do not conform
with or meet any jurisdiction requirements described within and in
the foregoing.  Thus, without proper jurisdiction of the subject
matter, any prosecution or continuation of this matter is unlawful
at its inception and duration.  To bring the offenses within the
jurisdiction of the federal courts, it must have been committed out
of the jurisdiction of any State; it is not the offenses committed,
but rather the place in which the offense is committed. **People v.**
**Godfrey**, **17 Johns 225 at 233.** In the doctrine of "Lex Loci" or the
"Law of the place" determines that standard of conduct and governs
as to matters within the right of action. See, **Gray v. Blight**, **112**
**F.2d 696.** While no one disputes the proposition that " the Consti-
tution created a Federal Government of limited powers," **Gregory v.**
**Ascroft**, **501 U.S. 452, 458, 115 L.Ed.2d 410, 111 S.Ct. 2395 (1991);**
and that while the Tenth Amendment makes explicit "that the powers
not delegated to the United States by the Constitution nor prohib-
ited by it to the States, are reserved to the States respective, or
to the people."

72.

The argument is the division of authority between the State and Federal Government, and the Federal Government's jurisdiction in sustaining conviction under the Federal Statutory provisions in which the Petitioner is charged **§922(g) and 924(e),**... The government's broader reading of these statutes would mark a major inroad into the domain traditionally left to the States. If a power is delegated to Congress in the Constitution (such as those enumerated), the Tenth Amendment expressly disclaims any reservation of that power to the States. If a power is an attribute of States sovereignty (such as this one we are arguing), resevered by the Congress. See, **United States v. Oregon**, 366, U.S. 643, 649, 6 L.Ed.2d 575, 81 S.Ct. 1278 (1961), **Case v Bowles**, 327 U.S. 92, 102, 90 L.Ed. 552, 66 S.Ct. 438 (1946); **Oklahoma ex rel Phillips v. Guy F. Atkinson Co.**, 313 U.S. 508, 534, 85 L.Ed. 1487, 61 S.Ct. 1050 (1941).

73.

It is this sense that the Tenth Amendment "States but a truism that all is retained which has not been surrendered." **United States v Darby**, 312 U.S. 100, 124, 85 L.Ed. 609, 61 S.Ct. 451, 132 ARL 1430 (1941). As Justice Story put it, "this amendment is a mere affirm-ation of what, upon any just reasoning is a necessary rule of in-terpreting the Constitution. Being an instrument of limited and enumerated powers, it follows irresistable, that what is not conferred is withheld and belongs to the States' authorities. 3.j. **Story Commentaries on the Constitution of the United States 752 (1833).** The argument this Petitioner brings to this court is the Federal Government did not have jurisdiction over the geographical location wherein the alleged activity took place, in land, which were never

ceded to the United States, the interstate commerce element becomes essential to establish jurisdciton and prove every element of the offense.  Applying the rational of the Supreme Court in **United States v Mechanik**, 475 U.S. 66, 70, 106 S.Ct. 938, 941, 89 L.Ed.2d 50 (1989), and **United States v Hooker**, 841 F.2d 1225, like the decision in **Hooker** Petitioner maintains that the harmelss error analysis of **Mechanik,** cannot be applied here because the court had no jurisdiction to try the Petitioner on a count which failed to expressly allege an effect on inter or intra-state commerce.  Jurisdiction is lacking if the indictment did not allege a federal crime, by means of a connection with Interstate Commerce.  This action by the prosecutor, would certainly deprive the Petitioner the basic protection, which the guaranty of the intervention of a Grand Jury was designed to secure.  For the defendant/petitioner could then be convicted on the basis of charges not found by and perhaps not even presented to the Grand Jury, which indicted him.  See, **Orfield, Criminal Procedure from arrest to appeal, 243.**  Petitioner now asserts his Fifth and Sixth Amendment Right of Due Process, in arguing that he was never indicted by his Grand Jury **for effecting any commerce!**  Thus, failure to present this element or state it in the pleading of the indictment, preclude the Appellate Court from sustaining his conviction. For all these above reasons, Petitioner asks this Court to look carefully to the Constitution and the cited statutes.  Petitioner asks this Court to invoke the doctrine of **Stare Decisis:** when a court has once laid down a principal of law applicable to a certain state of facts it will adhere to that principal, and apply it to all future cases, where facts are substantially the same regardless of

whether the parties are the same.  The doctrine of Stare Decisis,
provides the  means by which courts assure that the law will not
merely change erractically but will develop in principal and intel-
ligible fashion; the doctrine permits society to presume that bedrock
principal  are found in law rather than in the proclivities of
individuals, and there by contributes to the integrity of our Con-
stitution system of government both in appearance and in fact.
Petitioner now invokes the doctrine of **stare Decisis** to his arguments
herein; "Any departure from the doctrine of Stare Decisis demands
special justification." **Arizona v. Rumsey,** 467 US 203, 212, 81 L.
467 U.S. 203, 212, 81 L.Ed.2d 164, 104 S.Ct. 2305 (1984); also
**Olson v. Kennedy,** 456 U.S. 667, 691 n.34, 72 L.Ed.2d 416, 102 SCt.
2083 (1982).  Stevens J. concurring in judgment. **18 USC §922(g) and
§924(e),** id Congress wanted this statute to be used, outside of it's
territorial jurisdiction, such as anywhere or any place then it
would have drafted the needed provision, which certainly would have
included the Interstate Commerce nexus that is required.  " federal
criminal statute intended to be enforced within the States exceeds
Congress' Commerce Clause authority." To uphold the government's
contention that it can bring criminal charges for crimes committed
within a State is to convert Congressional authority into police
power, which is only within the authority of the States.  See,
**United States v. Lopez,** No. 93-1260, (decided April 26, 1995).  In
**McCullough v. Maryland,** 4 Wheat 316 (1819), the Federal Government
had to acknowledge that it can only exercise power granted to it.
The enumerated presupposes something not enumerated. See, **Gibbons
v Ogden, supra at 195.** The Constitution mandates that Congress
cannot create or give itself plenary police powers over the State
territories.  Congress must operate within the frame work of what

the Supreme Court defines the law to be.   See, **Marbury v Madison**,
**1 Cranch 137.**

74.

That, defense counsel failed at the sentencing of the Petitioner
to raise or challenge that §3551 of Title 18 applies only to those
who according to the language of the statute, supra had been found
guilty of any offense described in the Federal Statute...other then
an Act of Congress applicable exclusively in the District of Columbia.
Acts of Congress (Federal Law) are defined and circumscribed under
Rule 54(c) Federal Rules of Criminal Procedure.   Implementing reg-
ulations for **18 U.S.C. §3551** are at variance with their application
in the instant cause.   Where the instant matter is concerned, the
accused committed no violation of any properly enacted and duly
promulgated federal law within the legislative jurisdiction of the
Federal United States, nor within the parameters defined under the
implementing regulation for the Federal Sentencing provisions, thus,
the sentencing provisions set out under **18 U.S.C. §3551** do not apply
to the accused.   By consulting the **Parallel Tables of Authorities and
Rules 1997 Ed. at pg. 733**, it is found that the implementing regulation
for 18 U.S.C. §3551 are set out under 43 C.F.R. 9260-public lands,
Alaska, 36 C.F.R. 242-subsistence management regulations for public
lands Alaska, and 50 C.F.R. 100, (same as 36 C.F.R. 242).   Where
the instant matter is concerned the accused committed no violation
of any properly enacted and/or duly promulgated federal law within
the legislative jurisdiction of the Federal United States, nor
within the parameters defined under the implementing regulations
provisions, thus, the sentencing provisions set under 18 U.S.C.
§3551 do not apply to the accused.

75.

The court will find that the statutory provisions under which the U.S. District Court imposed the sentence against the accused (18 U.S.C. §3551) apply not to the Acts of Congress, which are applicable only in the District of Columbia.  See, Rule 54(c).

76.

It may further be shown that the statutory provision, **18 U.S. C. §3551**, is at variance with its published implementing, thereby creating ambiguity as to  its lawful authority and applicability over the accused.

77.

An invalid, unconstitutional or non-existent statute affects the validity of the "charging document," that is, the complaint, indictment or information.  If these documents are void or fatally defective, there is no subject matter jurisdiction since they are the basis of the court's jurisdiction; when an accused-party is indicted under a not yet effective or unenacted statute, the charging document is void.

78.

The indictment or complaint can be invalid if it is not constructed in the particular mode or form prescribed by the Constitution or Statute (42 C.J.S., **'Indictments and Information,'** §1, p.833). But it also can be defective and void when it charges a violation of a law, and that law is void, unconstitutional, unenacted, or mis-applied.  If the charging document is void, the subject matter of a court does not exist.  The want of a suffficient affidavit, complaint, or information goes to the jurisdiction of the court,

///// - 49  Memo. of Law with Incorporated Points and Auth. - N

... and renders all proceedings prior to the filing of a proper instrument void ab initio. **22 Corpus Juris Secundum, "Criminal Law," §324, p.390.**

### 79.

One way in which a complaint, or indictment fails to charge a crime, is by its failure to have the  charge based upon a valid or duly enacted law.  Complaints or indictments which cite invalid laws, or incomplete law, or non-existent law are regarded as being invalid on their case, thus fatally defective.

### 80.

The crux then of this whole issue of jurisdiction revolves around law, that is, the law claimed to be violated.  If one is subject to a law, they are then under the jurisdiction of some authority.  If a  crime is a alleged but there is no law to form the basis of that crime, there is no jurisdiction to try and sentence one even though they are subject to the legislative body and the court.  There has to be a law, a valid law, for subject matter jurisdiction to exist. Laws which lack an enacting clause are not laws of the legislative body to which we are constitutionally subject.  Thus, if a complaint or information charges one with a violation of a law which has no enacting clause, then no valid law cited.  If it cites no valid law then the complaint charges no crime, and the court has no subject matter jurisdiction to try the accused-party.

> [N]o authority need to be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable ... and without any force or effect whatever. **Hooker v. Boles**, 346 F.2d 285, 286 (1965).

81.

A judge or court may be in a legal sense immune from any claims
that it is guilty of wrong because of its improper exercise of jur-
isdiction.  However, it has no such protection where it lacks juris-
diction and the issue has been raised and asserted. When the lack
of jurisdiction has been shown, a judgment rendered is not only bold,
but is also usurpation.  Jurisdiction is a fundamental prerequisite,
and an usurpation thereof is a nullity.  **22 Corpus Juris Secundum,
"Criminal Law," §150 p. 183**  The excessive exercise of authority
has reference to want of power over the subject matter, the result
is void when challenged directly or collaterally.  If it has refer-
ence merely to the judicial method of the exercise of power, the
result is binding upon the parties to the litigation till reversed.
The former is usurpation; the latter error in judgment.  **<u>Voorhees
v The Bank of the United States</u>, 35 U.S. 449, 474-75 (1836)**, the
line which separates error in judgment from the usurpation of power
is very definite.

82.

This Honorable Court must be compelled to find as a Matter of
Law, that the Petitioner is in custody and detained of his Liberty
in violation of the Constitution of the United States of America,
where the foregoing and the Court's own record support that the
Federal Government lacked Federal Legislative jurisdiction over
the locus in quo, whereon the purported prohibitive acts were com-
mitted; and,

83.

That the government lacked Federal Subject Matter jurisdiction
where no prohibitive acts or conduct of the Petitioner moved be-

yond the borders of the sovereign state, nor was the Petitioner
indicted via the government's charging instrument, for an alleged
violation of the Federal Interstate Commerce Statute, thus, the
Federal Government lacked **Federal Subject Matter jurisdiction**, a
**sine qua non** to federal prosecution of the offense alleged against
the Petitioner

## CONCLUSION

### 84.

Where the instant cause is concerned, the Federal Statutory
Provisions under which the Petitioner is imprisoned and detained
of HIS LIBERTY, have not been promulgated by Congress in the Fed-
eral Register (44 U.S.C. §1505), nor do such statutory provisions
possess published implementing regulations in the Code of Federal
Regulations, nor is there to be found an Amendment to the Consti-
tution, ratified by the several sovereign states, to provide for
nationwide application of these Federal Statutory Provisions.

### 85.

The Consitution of the United States of America, provides that
it is only the Congress of the United States who has the authority
to create and enact Federal Laws.

### 86.

The Statutory Provision under which the Petitioner is charged
do not have implementing regulations in the Code of Federal Reg-
ulations; the section falls under 62 **Statutes at Large,** which have not
been promulgated in the Federal Register by Congress, and fails to
possess any published implementing regulation in the Code of Fed-
eral Regulations.

87.

There is no amendment to the Constitution ratified by three fourths of the sovereign states to provide for nationwide jurisdiction and application of which the accused party is charged.

88.

The undersigned committed no violations of the Federal Commerce Statute, nor do the Federal Statutory Provisions under which he is indicted contain language which could interpose a Commerce Nexus. Thus there is no showing of Federal Subject Matter jurisdiction.

89.

The locus in quo where the alleged prohibitive acts of the undersigned took place is a geographical location not within the Legislative, Territorial or Admiralty jurisdiction of the Federal Government.

**WHEREFORE,** the Court should be compelled to find as a Matter of Law that the Petitioner committed no alleged prohibitve acts within the Legislative, Territorial, or Admiralty jurisdiction of the United States of America, or within the reach of the Interstate Commerce Clause statute, therefore the Petitioner is unlawfully incarcerated and detained in violation of his secured Constitutional Rights by way of the Judgment of the Court in want of jurisdiction. And the denial of the **effective assistance of counsel**, the Petitioner must therefore, by law, be released and discharged from Federal custody, forthwith.

Date: _Oct 18_, 2006

Respectfully submitted by:

Dane Allen Yirkovsky, pro-se

## TABLE OF CITATIONS

## FROM THE MEMORANDUM OF LAW

3.

**ADAMS v UNITED STATES**, DK. No. 97-2263 (2nd Cir. 1998)

**UNITED STATES v MORGAN**, 346 U.S. 502, 505 (1954)

4.

**28 U.S.C. §88 District of Columbia-Courts**, Act of June 7, 1934, 48 Stat 926, and the Act June 25, 1936, 49 Stat. 1921

**O'DONOGHUE v UNITED STATES**, 289 U.S. 516 (1933), 77 L.Ed 1356, 53 S.Ct.74

**MOOKINI v U.S.**, 303 U.S.201 at 205(1938), 82 L.Ed 748, 58 S.Ct. 543

**FEDERAL TRADE COMMISSION v KLESNER**, 274 U.S. 145 (1927)

**CLAIBORNE-ANNAPOLIS FERRY CO. v  UNITED STATES**, 285 U.S. 382 (1932)

6.

**HARTFORD v DAVIES**, 16 S.Ct. 1051 (1896)

**UNITED STATES v BEAVANS**, 16 U.S. (3 Wheat) 336 (1818)

**UNITED STATES v BENSON**, 495 F.2d 481 (1946)

**UNITED STATES v ROGERS**, 23 F.658 (DC Ark. 1885)

**FORT LEAVENWORTH RAILROAD v IOWA**, 114 U.S. 525 (1885)

**ADAMS v UNITED STATES**, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943)

7.

**UNITED STATES v JOHNSON**, 337 F.2d 180 (affmd) 86 S.Ct. 749, 383 U.S. 169, 15 L.Ed. 681

9.

**UNITED STATES v BEAVENS,** 16 U.S. Wheat 336 (1818)

**3 Wheat At 350,351**

**3 Wheat At 386,387**

**3 Wheat At 388**

11.

**People v Godfrey,**  7 Johns 225 N.Y. (1819)

**17 Johns, at 233** (emphasis added)

12.

**United States v Beavens, supra**

**United states v Cornell,** 2 Manson 60, 1 cir. (1819)

**2 Manson, at 63**

13.

**New Orleans v United States,** 35 U.S. (10 pet)662 (1836)

**10 Pet. at 737**

14.

**New York v Miln,** 36 U.S.(11Pet.) 102 (1837)

**36 U.S. at 133**

**36 U.S. at 139**

15.

**Pollar v Hagan,** 44 U.S. (3 How.) 212 (1845)

**44 U.S. at 221**

**44 U.S. at 228, 229**

16.

**Fort Leavenworth R. Co. v Iowa,** 114 U.S. 525, (1885) 995

**114 U.S. at 531**

20.

**United States v Fox,** 95 U.S. 670, 672 (1877)

**Manchester v Massachusetts,** 139 U.S. 240, 262 (1890)

**United States v Flores,** 289 U.S. 137, 151 (1932)

**U.S. v Bedford,** 27 Fed. Cas. p.91, 103, Case No. 15,867 (1847)

22.

**United States v Britton,** 108 U.S. 199, 206 (1882)

**United States v Eaton,** 144 U.S. 677, 687 (1891)

**United States v Gradwell,** 243 U.S. 476, 485 (1916)

**Donnelley v United States,** 276 U.S. 505-511 (1927)

**Jerome v United States,** 318 U.S. 101, 104 (1942)

**Norton v United States,** 92 Fed. 2d 753 (1937)

**United States v Grossman,** 1 Fed. 2d 941, 950-51 (1924)

23.

**State of Pennsylvania v The Wheeling E. Bridge Co. 13,** How. (54 U.S.) 518, 563 (1851)

24.

**The United States v Worrall,** 2 Dall. (2. U.S.) 384, 391 (1798)

25.

**T.M. Cooley, A Treatise on the Constitutional Limitation,** 5th Ed., pp. 54, 55

**Cohens v Virginia,** 6 Wheat. (19 U.S.) 264, 404 (1821)

**20 Am Jur 2d §60, 377**

**Davis v Rogers,** 1 Houst (del) 44

28.

**Hagan v Lavine,** 415 U.S. 528 (1974)

**Ex Parte McCardle,** 7, Wall 506 19 L.Ed. 264

e.q. **Marbury v Madison,** 1 Cranch 137, 173-180, 2 L.Ed. 60 (1803)

**Mitchell v Maurer,** 293 U.S. 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934)

3-Table of Cit. from the Memo. of Law w/ Incorp. Points and Auth-N

**Judice v Vail**, 430 U.S. 327, 331, 332, 51 L.Ed. 2d 376, 97 S.Ct. 1211 (1977) (standing)

**Bender v Williams Port Areas School District**, 475 U.S. 534, 89 L. Ed. 2d 501, 106 S.Ct. 1326

**United States v Corrick**, 298 U.S. 435, 440, 80 L.Ed. 1263, 56 D. Vy. 829 (1936)

**e.q., Sumner v Matta**, 449 U.S. 539, 547-548 n.2, 66 L.Ed. 722, 101 S.Ct. 764 (1981)

**City of Kenosha v Bruno**, 412 U.S. 507, 511 37 L.Ed. 2d, 109, 93 S.Ct. 2222 (1973)

**Clark v Paul Gray, Inc.**, 306 U.S. 583, 588, 83 L.Ed. 1001 59 S.Ct. 744 (1939)

**St. Paul Mercury Indemnity Co. v Red Cab Co.**, 303 U.S. 283, 287-288 n.10 82 L.Ed. 845 58 S.Ct. 586 (1939)

**Marbury v Madison**, 5 U.S. 137, 176-178, 1 Cranch 137 (1803)

**Bell v Maryland**, 378 U.S. 266, 224 (1964)

**Stanard v Olesen**, 74 S.Ct. 768 (1954)

**McNutt v G.M.**, 56 S.Ct. 789, 80 L.Ed. 1135

**Thomas v Gaskiel**, 62 S.Ct. 673, 83 L.Ed. 111

**Housenbaum v Bauer**, 120 U.S. 450 (1887)

31.

**46 American Jurisprudence 2d Judgments §26**

**American Jurisprudence 2d Courts §115**

32.

**State of Rhode Island et, al v Commonwealth of Mass.**, 37 U.S. 657 (1938)

**Adams v United States**, 87 L.Ed. 1421

**American Jurisprudence 2d Courts §60 page**

**Old Wayne Mut. Life Asso. v McDonough,** 204 U.S. 8, 51 L.Ed. 345, 27 S.Ct. 236

35.

**Stirone v United States,** 361 U.S. 212,80 S.Ct. 270, 4 L.Ed. 2d. 252 (1960) at 857

36.

**Brecht v Abrahamson,** 507 U.S. 123 L.Ed. 2d 353, 113 S.Ct. 1710 (1993)

**Engle v Isaac,** 456 U.S. 107, 128, 71 L.Ed. 2d 783,102 S.Ct. 1031, 162 ALR 1330 (1945)

**United States v Unmans,** 410 U.S. 396 411-412, 35 L.Ed. 2d 379, 93 S.Ct. 1007 (1973)

**United States v Bass,** 404 U.S. 336, 349 30 L.Ed. 2d 488, 92 S.Ct. 515 (1971)

37.

**United States v Knowles,** 29 F.3d 947, 952 (5th Cir. 1994)

38.

**Meyer v United States,** 175 F.2d 45, 47 (2nd Cir. 1949)

**Lewellyn v Nunez,** 573 F.2d. 769 (2d Cir. 1978)

**C.I.R. v Ridgeway's Estates,** 291 F.2d 257 (3rd Cir. 1961)

**United States v Cruikshank,** 92 U.S. 542, 558 23 L.Ed. 588, 593

**United States v Simmons,** 96 U.S. 360, 362, 24 L.Ed. 819,820

**United States v Carll,** 105 U.S. 611, 612, 26 L.Ed. 1135

**U.S. v Hess,** 124 U.S. 483, 487, 31 L.Ed. 516, 518, 8 S.Ct. 543

**Blitz v U.S.,** 153 U.S. 308, 315, 38 L.Ed. 725, 14 S.Ct. 924

**Keck v U.S.,** 172 U.S. 434, 437 43 LEd. 505, 507, 19 S.Ct. 254

**Morissette v U.S.,** 246, 270 note 30, 96 L.Ed. 288, 304 S.Ct. 240,cf.

**U.S. v Petrillio,** 332 U.S.  1, 10, 11, 91 L.Ed. 1877, 1884, 1885, 67 S.Ct. 1538

**Hamling v United States,** 418 U.S. 87, 117, 94 S.Ct. 1887, 2907-08, 41 L.Ed. 2d 590 (1974)

5-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth. N

**U.S. v Pupo,** 841 F.2d 1235 (4th Cir. 1988)

**U.S. v Hooker,** Supra. At 841 F.2d 1225 (4th Cir. 1988)

**Orfield Criminal Procedure from Arrest to Appeal 243**

**Ex Parte Bain,** 121 U.S. 1, 30 L.Ed. 849, 7 S.Ct. 781

**United States v Norris,** 821 U.S. 619, 74 L.Ed. 1076, 50 S.Ct. 424

**Stirone v United States,** 361 U.S. 212, 4 L.Ed. 2d. 252, 80 S.Ct. 270

**Ex Parte Bain,** surpra (121 U.S. at 10,13 )

**Stirone v United States,** supra (361 U.S. at 218)

42.

**United States v Fox,** 95 U.S. 670, 672 (1877)

**Manchester v Massachusetts,** 139 U.S. 240, 262 (1890)

**United States v Flores,** 289 U.S. 137, 151 (1932)

**U.S. v Bedford,** 27 Fed. Cas., p. 91, 103, Case No. 15,867 (1847)

44.

**United States v Britton,** 108 U.S. 199, 206 (1882)

**United States v Eaton,** 144 U.S. 677, 687 (1897)

**United states v Gradwell,** 243 U.S. 476, 485 (1916)

**Donnelley v United States,** 276 U.S. 505, 511 (1927)

**Jerome v United States,** 318 U.S. 101, 104 (1942)

**Norton v United States,** 92 Fed. 2d 753 (1937)

**United States v Grossman,** 1.Fed. 2d 941, 950-51 (1924)

45.

**State of Pennsylvania v The Wheeling E. Bridge Co.,** 13 How. (54 U.S.) 518, 563 (1851)

**The United States v Wortall,** 2 Dall. (2. U.S.) 384, 391 (1798)

47.

**T.M. Cooley, A Treatise on the Constitutional Limitations,** 5th Ed., pp. 54, 55

**Cohens v Virginia**, 6 Wheat. (19 U.S.) 264, 404 (1821)

49.

**Five Flages Pig Line Co. v Dept. of Transportation**, 854, F.2d 1438, 1440 (1988)

**Stephan v United States**, 319 U.S. 415, 426 (1943)

**44 Stat Part 1, preface**

**Murrell v Western Union Tel. Co.**, 160 F.2d 787, 788 (1947)

**United States v Mercur Corp.**, 83 F.2d 178, 180 (1936)

53.

**Roger's Inc. v United States**, 265 F.2d 615, 618 (1959)

55.

**Slaughter-House Cases**, 83 U.S. 36

**United States v Dewitt**, 76 U.S. 41

**Gibbons v Ogden**, 22 U.S. 1

**Keller v United States**, 213 U.S. 138

**People v Godfrey**, 17 Johns 225, at 233 (N.Y. 1818)

**United States v Beavans**, 16 (3 Wheat) 336 (1818)

**Adams v United States**, 319 U.S. 312 (1943)

**Caha v United States**, 152 U.S. 211, 215 (1894)

58.

**Foley Brothers v Filardo**, 336 U.S. 281 (1949)

62.

**Hotch v United States**, 212 F.2d 280 (9th Cir. 1954), at p.283

63.

**Wei v Robinson**, 246 F.2d 739 (7th Cir. 1957) cert. den. 78 S.Ct. 144, 355 U.S. 879

**Wolfson v United States**, 492 F.2d 1386, 204 Ct. Cl. 83 (1974)

7-Table of Cit. from the Memo. of Law w/ Incorp. Points and Auth.-N

**Shafer v United States**, 229 F.2d 124, cert. den. 76 S.Ct. 78, 351 U.S. 931

**Northern States Power Co. v Rural Electrification Administration**, 248 F. Supp. 616 (1965)

64.

**United States v Mersky**, 361 U.S. 431, 438 (1960)

65.

**United States v Reinis**, 794 F.2d 506 (9th Cir. 1986)

**United States v Two Hundred Thousand Dollar**, 590 F. Supp. 846 (S.D. Fla. 1984)

66.

**United States v Welden**, 377 U.S. 95 (1964)

**Stephan v United States**, 319 U.S. 423 (1943)

**Best Foods v United States**, 147 F. Supp. 749, 37 Cust. Ct. 1 (1956)

**Peart v Motor Vessel Bering Explorer**, 373 F. Supp. 927 (1974)

67.

**United States v Nevers**, 7 F.3d 59 (5th Cir. 1993)

**United States v Larionoff**, 431 U.S. 864, at 973, 97 S. Ct. 2150, at 2156, 53 L.Ed. 2d, 48 at 56

**Manhattan Gen. Equip. Co. v C.I.R.**, 297 U.S. at 134

**Neel v United States**, 266 F. Supp. at 10

**Western Union Teleg. Co. v F.C.C.**, 541 F.2d 346, 354 (3rd Cir. 1976), cert. den. 429 U.S. 1029 (1977)

**Morning v Family Publications Services, Inc.**, 411 U.S. 356, 369 (1973)

**United States v Mersky, supra.**

69.

**United States v Pupo**, 841 F.2d 1235

**United States v Young**, 730 F.2d at 224

**United States v McCray**, 665 F.2d 664, 678, 679 (5th Cir. 1982)

**United States v Stirone**, 361 U.S. 212, 4 L.Ed. 2d 252, 80 S. Ct.

**United States v Wuco**, 535 F.2d 1225 (9th Cir. 1976). Cert. denied

429 U.S. 978, 97 S. Ct. 488, L.Ed. 2d 586 (1976)

**Hale v United States**, 89 F.2d (4th Cir.)

**United States v Berlin**, 472 F.2d 1002, 1007 (2d Cir. 1973)

**United States v Beard**, 414 F.2d 1014, 1017 (3rd Cir.)

**United States v Lopez**, at 2F.3d 1342

71.

**Arizona v Manypenny**, 451 U.S. 232, 101 S. Ct. 1657

**United States v Fessler**, 781 F.2d 384, 386 (1986)

**People v Godfrey**, 17 Johns 225 at 233

**Gray v Blight**, 112 F.2d 696

**Gregory v Ascroft**, 501 U.S. 452, 458, 115 L.Ed. 2d 410, 111 S. Ct.

2395 (1991)

72.

**United States v Oregon**, 366, U.S. 643, 649, 6 L.Ed. 2d 575, 81

S. Ct. 1278 (1961)

**Case v Bowles**, 327 U.S. 92, 102 90 L.Ed. 552, 66 S. Ct. 438 (1946)

**Oklahoma ex rel Phillips v Guy F. Atkinson Co.**, 313 U.S. 508, 534,

85 L.Ed. 1487, 61 S. Ct. 1050 (1941)

73.

**United States v Darby**, 312 U.S. 100, 124, 85 L.Ed. 609, 61 S. Ct.

451, 132 ARL 1430 (1941)

**United States v Mechanik**, 475 U.S. 66, 70, 106 S. Ct. 938, 941,

89 L.Ed. 2d 50 (1989)

**United States v Hooker**, 841 F.2d 1225

**Arizona v Rumsey,** 467 U.S. 203, 212, 81 L.Ed. 2d 164, 104 S. Ct. 2305 (1984)

**Oregon v Kennedy,** 456 U.S. 667, 691, 692 n. 34, 72 L.Ed. 2d 416, 102 S. Ct. 2083 (1982)

**United States v Lopez,** No. 93-1260

**McCullough v Maryland,** Wheat 316 (1819)

**Gibbons v Ogden,** Supra at 195

**Marbury v Madison,** 1 Cranch 137, 177 (1803)

74.

**18 U.S.C. §3551**

**Parallel Tables of Authorities and Rules 1997 Ed. at pg. 733**

**43 C.F.R. 9260-public lands, Alaska**

**36 C.F.R. 242-subsistence management regulations for public lands in Alaska**

**50 C.F.R. 100, (same as C.F.R. 242)**

78.

**42 C.J.S. 'Indictments and Information' §1, p.833**

**22 Corpus Juris Secundum, "Criminal Law", §324, p.390**

80.

**Hooker v Boles,** 346 F.2d 285, 286 (1965)

81.

**22 Corpus Juris Secundum, "Criminal Law", §150 p.183**

**Voorhees v The Bank of the United States,** 35 U.S. 449, 474-75 (1836)

84.

**Federal Register (44 U.S.C. §1505)**

10-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth.-N

IN THE UNITED STATES DISTRICT COURT   **FILED**
FOR THE NORTHERN DISTRICT OF IOWA CEDAR RAPIDS HOOTER'S OFFICE
CEDAR RAPIDS DIVISION NORTHERN DISTRICT OF IOWA

SEP 2 8 1999

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>vs. )<br><br>DANE ALLEN YIRKOVSKY )<br><br>Defendant. ) | By: _____<br>                  Deputy<br><br>CRIMINAL NO. 99-64 mJm<br><br>COUNT 1<br>18 U.S.C. Section 922(g)<br>18 U.S.C. Section 924(e) |

**INDICTMENT**

The Grand Jury charges:

COUNT 1

PRESENTED IN OPEN COURT
BY THE
FOREMAN OF THE GRAND JURY
IN THE PRESENCE OF THE
GRAND JURY

And filed SEP. 28 1999
JAMES D. HODGES, JR., CLERK

On or about December 9, 1998, in the Northern District of Iowa and elsewhere,

DANE ALLEN YIRKOVSKY, having been convicted of three or more violent felony

offenses, each punishable by imprisonment for a term exceeding one year, to wit:

On April 2, 1982, the defendant was convicted of burglary in the 2nd
degree of the Que and Brew Tavern, in the Iowa District Court for Linn
County, Iowa, Case No. CRF7110A.

On May 21, 1982, the defendant was convicted of burglary in the 2nd
degree in the Iowa District Court for Jones County, Iowa, Case No.
CRF29-0482.

On March 9, 1993, the defendant was convicted of burglary of a United
States Post Office in Fairfax, Iowa, occurring on July 9 or 10, 1992, in the
United States District Court for the Northern District of Iowa, Case No.
92-12.

On March 9, 1993, the defendant was convicted of burglary of a United
States Post Office in Mount Vernon, Iowa, occurring on July 9 or 10, 1992,
in the United States District Court for the Northern District of Iowa, Case
No. 92-12.

On March 9, 1993, the defendant was convicted of burglary of a United States Post Office in Center Point, Iowa, occurring on July 9 or 10, 1992, in the United States District Court for the Northern District of Iowa, Case No. 92-12.

knowingly possessed in and affected commerce ammunition, that is:

1. One round to a Winchester .22 Caliber, Super X.

This in violation of Title 18, United States Code, Sections 922(g) and 924(e).

A TRUE BILL

_____
Foreman

_____
Date

STEPHEN J. RAPP
UNITED STATES ATTORNEY

By: _____

PATRICK J. REINERT
Assistant United States Attorney

2

# PARALLEL TABLE OF AUTHORITIES AND RULES

The following table lists rulemaking authority (except 5 U.S.C. 301) for regulations codified in the *Code of Federal Regulations*. Also included are statutory citations which are noted as being interpreted or applied by those regulations.

The table is divided into four segments: United States Code citations, United States Statutes at Large citations, public law citations, and Presidential document citations. Within each segment the citations are arranged in numerical order:

For the United States Code, by title and section;

For the United States Statutes at Large, by volume and page number;

For public laws, by number; and

For Presidential documents (Proclamations, Executive orders, and Reorganization plans), by document number.

Entries in the table are taken directly from the rulemaking authority citation provided by Federal agencies in their regulations. Federal agencies are responsible for keeping these citations current and accurate. Because Federal agencies sometimes present these citations in an inconsistent manner, the table cannot be considered all-inclusive.

The portion of the table listing the United States Code citations is the most comprehensive, as these citations are entered into the table whenever they are given in the authority citations provided by the agencies. United States Statutes at Large and public law citations are carried in the table only when there are no corresponding United States Code citations given.

This table is revised as of January 1, 1998.



# EXHIBIT B

## CFR Index

| 16 U.S.C.—Continued | CFR |
|---|---|
| | 355, 356, 380 |
| | 50 Parts 11, 12, 14, 17, 24 |
| 1561 et seq | 50 Part 227 |
| 1603 | 36 Part 200 |
| 1604 | 36 Part 219 |
| 1606 | 7 Part 701 |
| 1608—1610 | 23 Part 660 |
| 1612 | 36 Part 216 |
| 1612 note | 36 Part 215 |
| 1613 | 36 Part 219 |
| 1620 | 7 Part 1 |
| 1704 et seq | 43 Part 26 |
| 1801 et seq | 50 Parts 268, 300, 600, 622, 630, 640, 644, 648, 649, 654, 660, 662, 674, 678, 679 |
| 1801—1882 | 15 Part 904 |
| 1851 note | 15 Part 904 |
| | 50 Part 697 |
| 1853 | 15 Part 905 |
| | 50 Part 605 |
| 1901 et seq | 36 Part 9 |
| 1901—1912 | 43 Part 3830 |
| 1907 | 43 Part 3830 |
| 2001—2645 | 18 Part 290 |
| 2001—2009 | 7 Part 601 |
| 2101 et seq | 36 Part 200 |
| 2101—2111 | 7 Part 701 |
| 2103b | 36 Part 230 |
| 2114 | 36 Part 230 |
| 2201—2205 | 7 Part 701 |
| 2203—2205 | 7 Part 601 |
| 2203 | 7 Part 624 |
| 2309 | 16 Part 455 |
| 2401 et seq | 45 Part 672 |
| | 40 Part 8 |
| 2401—2412 | 15 Part 904 |
| | 45 Part 670 |
| 2401 | 45 Part 670 |
| 2403 | 40 Part 8 |
| 2405 | 45 Part 671 |
| 2431 et seq | 50 Part 300 |
| 2431—2444 | 15 Part 904 |
| 2501—2514 | 36 Part 72 |
| 2601—2645 | 18 Parts 2—4, 32—35, 37, 41, 45, 46, 101, 116, 131, 141, 154, 281, 286, 290, 292, 375, 381, 382, 385 |
| 2901 | 50 Part 83 |
| 3101 et seq | 36 Parts 9, 13 |
| | 43 Parts 36, 3000, 3110, 3120, 3150 |
| | 50 Part 36 |
| 3101—3126 | 36 Part 242 |
| | 50 Part 100 |
| 3124 | 43 Part 2090 |
| 3142 | 50 Part 37 |
| 3170 | 36 Part 251 |
| 3197 | 36 Part 13 |
| 3210 | 36 Part 251 |
| 3371 et seq | 50 Parts 10—12, 14 |
| 3371—3378 | 15 Part 904 |
| | 50 Parts 10, 14, 300 |
| 3372 | 25 Part 244 |
| 3373 | 7 Parts 1, 380 |
| 3374 | 7 Part 356 |

| 16 U.S.C.—Continued | CFR |
|---|---|
| | 50 Part 13 |
| 3501 et seq | 13 Part 116 |
| 3601—3608 | 15 Part 904 |
| 3631 et seq | 50 Part 674 |
| 3631—3644 | 15 Part 904 |
| 3636 | 50 Part 300 |
| 3801 et seq | 7 Parts 12, 601 |
| 3801 | 7 Part 610 |
| 3834 | 7 Part 1400 |
| 3837 et seq | 7 Part 1467 |
| 3837—3837f | 7 Part 623 |
| 3839aa—3839aa-8 | 7 Part 1466 |
| 3841—3844 | 7 Part 12 |
| 3843 | 7 Part 614 |
| 3844 | 7 Part 1940 |
| 3901 et seq | 50 Part 25 |
| 4101 et seq | 50 Part 253 |
| 4201—4245 | 50 Part 17 |
| 4223—4244 | 50 Part 14 |
| 4301—4309 | 36 Part 290 |
| | 43 Part 37 |
| 4601-6a | 36 Part 291 |
| 4901—4916 | 50 Parts 13, 14 |
| 5101 et seq | 50 Part 697 |
| 5501 et seq | 50 Part 300 |

| 17 U.S.C. | |
|---|---|
| 101 | 19 Part 133 |
| 111 | 37 Parts 801, 803 |
| 116 | 37 Part 254 |
| 118 | 37 Part 253 |
| 119 | 37 Parts 257, 258 |
| 509 | 28 Part 9 |
| 601—603 | 19 Part 133 |
| 702 | 37 Parts 201—204, 211, 256, 310 |
| 801—803 | 37 Part 251 |
| 801 | 37 Parts 252—255, 304 |
| 802 | 37 Parts 256, 310 |
| 803 | 37 Parts 252, 253, 255 |
| 804 | 37 Part 306 |
| 908 | 37 Part 211 |
| 1007 | 37 Part 259 |

| 18 U.S.C. | |
|---|---|
| 13 | 32 Parts 210, 263, 1290 |
| | 39 Part 232 |
| 42—44 | 50 Part 11 |
| 42 | 19 Part 12 |
| | 50 Parts 10, 13, 14, 16 |
| 43—44 | 50 Part 12 |
| 47 | 43 Part 4700 |
| 109 | 21 Part 41 |
| 201—212 | 24 Part 0 |
| 201—209 | 12 Part 511 |
| | 29 Part 2202 |
| | 32 Part 1293 |
| 201 | 19 Part 161 |
| 201 note | 20 Part 360 |
| 202 | 14 Part 300 |
| 203 | 7 Part 1 |
| | 31 Part 8 |
| 205 | 7 Part 1 |
| | 14 Part 300 |
| | 31 Part 8 |
| 207 | 5 Parts 1304, 2641 |
| | 7 Part 1 |

18 U.S.C.—Continued
CFR

11 Part 7
12 Parts 400,
933, 2434, 2637
14 Parts 300, 1207
15 Part 0
16 Part 1030
17 Part 140
19 Part 200
22 Parts 18, 223, 525, 710
28 Part 45
29 Part 0
31 Part 15
36 Part 905
39 Part 956
41 Part 105–735
45 Parts 73b, 500
46 Parts 500, 502
49 Part 98
208 .........................................5 Part 2640
10 Part 1010
12 Part 264a
15 Part 0
16 Part 5
18 Part 1301
22 Part 606
29 Parts 0
34 Part 73
45 Part 680
46 Part 500
219 ....................................32 Part 516
223 ....................................28 Part 524
241 note ............................24 Part 573
437 ....................................25 Part 140
474 ....................................31 Parts 402, 405
474A ..................................31 Part 601
492 ....................................31 Parts 101, 402, 403
512 ....................................28 Part 9
545 ....................................19 Parts 145, 161
546 ....................................19 Part 162
550 ....................................19 Part 191
641 ....................................12 Part 4
43 Part 8200
49 Part 801
701 ....................................32 Part 507
50 Part 80
702 ....................................32 Part 507
707 ....................................7 Part 8
711 ....................................36 Part 271
751—752 ............................28 Part 511
751 ....................................28 Part 570
798 ....................................32 Parts 322, 518
799 ....................................14 Parts 1203a, 1214
831—835 ............................49 Parts 392, 396, 398
831—833 ............................49 Part 397
834 ....................................49 Part 178
835 ....................................49 Part 397
847 ....................................27 Parts 55, 178
921—928 ............................27 Part 178
921 ....................................27 Part 72
926 ....................................27 Part 200
951 ....................................28 Part 73
981 ....................................28 Part 9
39 Part 233
982 ....................................28 Part 9
1001 ..................................7 Part 1443
32 Part 525

18 U.S.C.—Continued
CFR

1001ff ................................38 Part 21
1017 ..................................36 Part 701
1114 ..................................28 Part 64
1116 ..................................22 Part 2
1159 ..................................25 Part 309
1261 ..................................27 Part 72
1382 ..................................32 Parts 527, 552, 770
1467 ..................................28 Part 9
1512 ..................................28 Part 551
1693—1699 ........................39 Parts 310, 320
1752 ..................................31 Part 408
1791—1792 ........................28 Part 511
1791 ..................................28 Parts 6, 540
1793 ..................................28 Part 511
1851—1861 ........................43 Part 9260
1851—1858 ........................43 Part 9230
1905—1906 ........................12 Part 4
1905 ..................................19 Part 103
20 Part 402
21 Part 20
45 Part 5
1955 ..................................28 Part 9
1956—1957 ........................39 Part 233
1963 ..................................28 Part 9
2071 ..................................49 Part 801
2152 ..................................32 Part 761
2253 ..................................28 Part 9
2254 ..................................28 Part 9
39 Part 233
2257 ..................................28 Part 75
2332d ................................31 Parts 500,
515, 535, 550, 560, 575, 596
2341—2346 ........................27 Part 296
2386 ..................................28 Part 10
2510 et seq ........................15 Parts 730,
738, 742, 774
2513 ..................................28 Part 9
3001 note ..........................28 Part 42
3013 ..................................28 Part 545
3050 ..................................28 Part 511
3056 ..................................31 Parts 409, 413
3059 ..................................28 Part 7
3061 ..................................39 Parts 232, 233
3401—3402 ........................32 Part 1290
3401 ..................................28 Part 52
32 Part 516
3496 ..................................22 Part 92
3500 ..................................32 Part 518
3521—3528 ........................28 Part 524
3551 et seq ........................43 Part 9260
3551—3586 ........................36 Part 242
50 Part 100
3559 ..................................10 Part 860
42 Part 72
3565 ..................................28 Parts 527, 571
3568—3569 ........................28 Part 571
3568 ..................................28 Part 523
3569 ..................................28 Part 527
3571 ..................................10 Parts 860, 1048
28 Part 545
42 Part 72
3582 ..................................28 Part 571
3621—3622 ........................28 Parts 500, 501,
505, 511—513, 522—524, 527, 540, 541—
545, 547—552, 570, 571
3621 ..................................28 Part 553

| 18 U.S.C.—Continued | CFR |
|---|---|
| 3622 | 28 Part 553 |
| 3624 | 28 Part 553 |
| 3624 | 28 Parts 500, 501, 505, 511—513, 522—524, 527, 540, 541—545, 547—552, 570, 571 |
| 3663 | 28 Part 545 |
| 4001—4002 | 28 Part 26 |
| 4001 | 28 Parts 500, 501, 503—505, 511—513, 522—524, 527, 540—543, 545, 547—553, 570—572 |
| 4001 note | 28 Part 505 |
| 4003 | 28 Parts 503, 504 |
| 4005 | 28 Parts 549, 551 |
| 4012 | 28 Part 511 |
| 4042 | 28 Parts 66, 67, 70, 500, 501, 503—505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570—572 |
| 4044 | 28 Part 504 |
| 4045 | 28 Part 549 |
| 4046 | 28 Part 524 |
| 4081—4082 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—545, 547—550, 552, 553, 570—572 |
| 4081 | 28 Part 504 |
| 4100—4115 | 28 Part 527 |
| 4126 | 28 Parts 301, 302, 345, 545, 553 |
| 4161—4166 | 28 Parts 501, 522, 523, 527, 541, 544, 550, 570, 571 |
| 4162—4165 | 28 Part 551 |
| 4201—4218 | 28 Parts 527, 571 |
| 4203—4204 | 28 Part 2 |
| 4203 | 13 Part 102 |
| | 28 Part 16 |
| 4205 | 28 Part 572 |
| 4241—4247 | 28 Part 549 |
| 4251—4255 | 28 Part 550 |
| 4351—4353 | 28 Parts 66, 67, 69, 70 |
| 5003 | 28 Part 527 |
| 5006—5024 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 542, 543, 545, 547—550, 553, 570, 571 |
| 5006—5014 | 28 Part 541 |
| 5006 | 28 Part 552 |
| 5015 | 28 Parts 543, 551, 572 |
| 5016—5024 | 28 Part 541 |
| 5017 | 28 Part 2 |
| 5024 | 28 Part 552 |
| 5031—5042 | 28 Part 571 |
| 5039 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570, 572 |
| 5041 | 28 Part 2 |
| 6002 | 14 Part 13 |
| | 16 Parts 2—4 |
| 6004 | 16 Parts 2—4 |

| 19 U.S.C. | |
|---|---|
| 2 | 19 Part 101 |
| 54 | 19 Part 24 |
| 58a—58c | 19 Part 24 |
| 58b | 19 Parts 101, 122 |
| 58c | 19 Part 111 |
| 66 | 19 Parts 4, |

| 19 U.S.C.—Continued | CFR |
|---|---|
| | 7, 10—12, 18, 19, 24, 54, 101—103, 111—115, 118, 122, 123, 125, 127, 128, 132—134, 141—148, 151, 152, 158, 159, 161, 162, 171—177, 181, 191, 192 |
| 81a—81u | 15 Part 400 |
| | 19 Parts 146, 147 |
| 81a—81b | 15 Part 400 |
| 81c | 19 Part 191 |
| | 27 Parts 19, 25, 250, 251, 252 |
| 81f | 15 Part 400 |
| 81j | 15 Part 400 |
| 81l—81s | 15 Part 400 |
| 197—198 | 19 Part 158 |
| 288 | 19 Part 4 |
| 289 | 19 Part 4 |
| 293—294 | 19 Part 4 |
| 482 | 19 Part 162 |
| 794 | 32 Part 1906 |
| 1202 | 7 Parts 6, 1530 |
| | 9 Part 151 |
| | 15 Parts 30, 301, 315 |
| | 19 Parts 7, 10, 12, 18, 19, 24, 54, 101, 102, 111, 114, 125, 128, 132, 134, 141, 145—148, 151, 152, 177, 181, 191 |
| | 27 Parts 251, 252 |
| | 50 Parts 10, 13, 15 |
| 1202 note | 7 Part 6 |
| | 14 Part 1214 |
| | 15 Part 303 |
| | 19 Part 351 |
| 1303 | 19 Parts 12, 207, 353 |
| 1303 note | 19 Parts 351 |
| 1304 | 19 Part 134 |
| 1305 | 19 Parts 12, 145 |
| 1306 | 7 Part 330 |
| | 9 Parts 92—94, 98, 130 |
| 1307 | 19 Part 12 |
| 1309 | 19 Parts 10, 191 |
| | 27 Part 252 |
| 1311—1312 | 19 Parts 19, 125 |
| 1311 | 19 Part 151 |
| | 21 Part 1220 |
| | 27 Part 19, 252 |
| 1313 | 19 Parts 10, 191 |
| 1315 | 19 Parts 141, 145, 152 |
| 1317 | 19 Part 10 |
| 1321 | 19 Parts 10, 128, 145, 148 |
| 1322—1333 | 19 Part 18 |
| 1322 | 19 Parts 4, 123 |
| 1331 | 19 Part 201 |
| 1333 | 19 Parts 201, 210 |
| 1335 | 19 Parts 200—202, 204—206, 210, 213 |
| 1336 | 19 Part 207 |
| 1337 | 19 Parts 12, 210 |
| 1339 | 19 Part 213 |
| 1342 | 19 Part 210 |
| 1365 | 7 Part 1530 |
| 1401a | 19 Parts 10, 141, 152 |
| 1402 | 19 Parts 10, 141 |
| 1411—1414 | 19 Part 101 |
| 1431—1435 | 19 Part 4 |
| 1431 | 19 Parts 103, 123, 162 |
| 1433 | 19 Parts 122, 123 |

*Reorganization Plans*—Continued          CFR
                                      45 Parts 7, 16, 204
1953 Plan No. 2....................................7 Part 2
1958 Plan No. 1 .............................32 Part 185
                                      46 Parts 345—347
1961 Plan No. 3............................14 Parts 213,
          216, 247, 384, 385
1961 Plan No. 6 ......................12 Parts 501, 933
1961 Plan No. 7..........................46 Parts 202,
          206, 207, 251, 276, 280, 283, 294, 309,
          310, 331, 381, 385, 390, 391, 501, 585,
          586
1965 Plan No. 1 .............................19 Part 101
1965 Plan No. 2 .............................15 Part 903
1968 Plan No. 2 ..........................24 Parts 1, 2
                                      49 Part 601
1968 Plan No. 3 .....................40 Parts 180, 190
1970 Plan No. 2.........................41 Part 101–37
1970 Plan No. 3 .............................21 Part 193
          40 Parts 2,
          112, 121, 160, 177—179, 190, 194
1970 Plan No. 4 .............................15 Part 950
          50 Parts 251, 254, 260
1973 Plan No. 1 .................................31 Part 9

*Reorganization Plans*—Continued          CFR
                                      46 Parts 345—347
1977 Plan No. 2...........................22 Parts 504,
          514—518
1978 Plan No. 1 .........................29 Parts 1614,
          1620, 1621, 1625—1627, 1690
1978 Plan No. 2 .............................5 Parts 177,
          179, 1250—1255
1978 Plan No. 3 .........................44 Parts 1, 2,
          5—15, 18, 59—68, 70—73, 75, 77, 78,
          80—83, 150—152, 206, 222, 300—304,
          306, 308, 312, 320, 321, 323, 324, 327—
          331, 350, 351, 360, 361
          48 Parts 4401—4403,
          4405, 4406, 4408, 4409, 4412, 4414—
          4417,4419, 4424, 4426, 4429, 4432, 4433,
          4435, 4436, 4452,
1978 Plan No. 4 .........................29 Parts 2510,
          2550, 2570
1979 Plan No. 1 .........................10 Parts 1500,
          1502, 1504, 1530, 1534
1979 Plan No. 3.....................15 Parts 705, 2009
1980 Plan No. 1 .................................10 Part 1



*Office of the Attorney General*
*Washington, D. C. 20530*

March 20, 1997

RECEIVED

BY CERTIFIED MAIL

MAR 27 1997

The Honorable Gary Locke
Governor of Washington
P.O. Box 40002
Olympia, WA  98504

OFFICE OF THE GOVERNOR

Dear Governor Locke:

On behalf of the United States, I hereby accept concurrent legislative jurisdiction over the site of a Federal Bureau of Prisons facility, near Seattle and Tacoma, Washington, to be used for prisoner detention, correction, and other purposes. As you may know, construction of the facility, presently known as FDC Seatac, is well under way. The facility is soon expected to begin operations.

The State of Washington has consented to the acquisition by the United States of land acquired for federal purposes, see Wash. Rev. Code Ann. § 37.04.010, and has ceded concurrent criminal and civil legislative jurisdiction over such land to the United States for all purposes for which the United States acquired the land, see Wash. Rev. Code Ann. § 37.04.020; see also Department of Labor and Industries v. Dirt & Aggregate, Inc., 120 Wash.2d 49, 52-53, 837 P.2d 1018, 1021 (Wash. 1992) (holding that the state may cede legislative jurisdiction to the United States, and that the scope of the federal jurisdiction is governed by the terms of the cession).

Federal law provides that a state's cession of legislative jurisdiction to the United States does not take effect until accepted by the head of the federal department that has custody over the land. 40 U.S.C. § 255. This letter constitutes the United States' acceptance of concurrent criminal and civil jurisdiction over the site of the facility. Copies of the

# EXHIBIT C

The Honorable Gary Locke
Page 2

Declaration of Taking and general warranty deeds for the site are enclosed.

Concurrent legislative jurisdiction will mutually benefit the State of Washington and the United States. Absent federal legislative jurisdiction, the state would have the entire burden of prosecuting offenses that might be committed at the facility, except those offenses that violate federal law even when committed outside areas of federal legislative jurisdiction. Concurrent jurisdiction enables the United States to investigate and prosecute certain offenses when appropriate, without displacing state authorities. Criminal offenses perpetrated by or against federal prisoners confined at the institution can be investigated by the Federal Bureau of Investigation and prosecuted by the United States Attorney. Thus, cession of concurrent jurisdiction may relieve the State of some of the burden of investigating and prosecuting criminal offenses that occur at the federal institution. In some situations, it might be more appropriate for the State to investigate and prosecute violations of state law, and the State could do so.

Please execute the acknowledgment of receipt of this letter on the enclosed copy, and return that copy to:

Michael E. Wall
United States Department of Justice
Environment & Natural Resources Division
Policy, Legislation and Special Litigation Section
950 Pennsylvania Avenue, NW, Room 2133
P.O. Box 4390
Washington, DC 20044-4390.

Should you need any further information, please have your staff contact Mr. Wall on (202) 514-1442, or Jeffrey J. Limjoco, an attorney with the Federal Bureau of Prisons, on (202) 307-1240.

The Honorable Gary Locke
Page 3

I appreciate your assistance in this important area of
federal-state cooperation.

Sincerely,

Janet Reno

Enclosures

Receipt of the above notice of acceptance of concurrent
legislative jurisdiction over the site of the Federal Detention
Center near Seattle and Tacoma, Washington (FDC Seatac) is hereby
acknowledged this 11th day of April , 1997.

Governor of Washington



Office of the Attorney General
Washington, D. C. 20530



RECEIVED

MAY - 6 1997

OFFICE OF THE
GOVERNOR

May 1, 1997

BY CERTIFIED MAIL

The Honorable Frank Keating
Governor of Oklahoma
Oklahoma City, Oklahoma  73105

Dear Governor Keating:

On behalf of the United States, I hereby accept concurrent legislative jurisdiction over the land that presently is the site of the Federal Transfer Center (FTC) in Oklahoma City.

The State of Oklahoma recently enacted Senate Bill No. 283 to cede to the United States concurrent legislative jurisdiction over the FTC site. That bill, styled "An Act Relating to the United States; Ceding Concurrent Jurisdiction Over Certain Real Property to the United States; Reserving Concurrent Jurisdiction for Certain Purposes; Providing for the Termination of Such Jurisdiction; Providing for Codification; and Declaring an Emergency," was signed by you on April 9, 1997.  Section 1 of the Bill provides, in relevant part:

> Notwithstanding any other provision of law, concurrent jurisdiction is hereby ceded to the United States over the tract of land comprised and any tracts of land hereafter comprised within the limits of the Oklahoma City Federal Transfer Center, a facility which is leased to the United States and located at Will Rogers World Airport in Oklahoma City, County of Oklahoma. . . . The jurisdiction so ceded shall continue no longer than the United States shall lease or own such lands or portions thereof.

Federal law provides that a state's cession of legislative jurisdiction to the United States does not take effect until accepted by the head of the federal department that has custody over the land.  40 U.S.C. § 255.  This letter constitutes the United States' acceptance of concurrent criminal and civil legislative jurisdiction over the tracts of land presently comprised within the limits of the FTC.  Enclosed is a copy of the property description for the land over which the United States accepts concurrent jurisdiction.

The Honorable Frank Keating
Page 2

Please execute the acknowledgment of receipt of this letter on the enclosed copy, and return that copy to:

Michael E. Wall
United States Department of Justice
Environment & Natural Resources Division
Policy, Legislation and Special Litigation Section
950 Pennsylvania Avenue, NW, Room 2133
P.O. Box 4390
Washington, DC 20044-4390

Should you need any further information, please have your staff contact Mr. Wall on (202) 514-1442, or Jane Crowell, an attorney with the Federal Bureau of Prisons, on (202) 307-1240.

I appreciate your assistance in this important area of federal-state cooperation.

Sincerely,

Janet Reno

Enclosure

Receipt of the above notice of acceptance of concurrent legislative jurisdiction over the site of the Federal Transfer Center in Oklahoma City, Oklahoma, is hereby acknowledged this ___ day of _____, 1997.

Governor of Oklahoma

EXHIBIT (d)

**Evidentiary Hearing**
[not submitted]



UNITED STATES    OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS
SECOND SESSION

## VOLUME 94—PART 8

JULY 26, 1948, TO DECEMBER 31, 1948
(PAGES 9353 TO 10316)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

EXHIBIT E

# Congressional Record

## VOL. 94
## PART 8
### PAGES 9353 TO 10316

## 30TH CONGRESS
## 2D SESSION
### JULY 26, 1948
### TO
### DECEMBER 31, 1948

KF



# Congressional Record

United States of America

## PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

#### CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive;

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:
G. C. MARSHALL,
Secretary of State.

### CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Fenzel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably detained.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. McCARRAN], the Senator from Tennessee [Mr. McKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Senator from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

[CHAPTER 646]

## AN ACT

To revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary".

June 25, 1948
[H. R. 3214]
[Public Law 773]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That title 28 of the United States Code, entitled "Judicial Code and Judiciary" is hereby revised, codified, and enacted into law, and may be cited as "Title 28, United States Code, section —", as follows:

Title 28, U. S. Code.
Codification and enactment into law.

# TITLE 28, JUDICIARY AND JUDICIAL PROCEDURE

| Part | | Sec. | |
|---|---|---|---|
| I. | Organization of courts | 1 | *Infra.* |
| II. | United States attorneys and marshals | 501 | *Post*, p. 909. |
| III. | Court officers and employees | 601 | *Post*, p. 913. |
| IV. | Jurisdiction and venue | 1251 | *Post*, p. 927. |
| V. | Procedure | 1651 | *Post*, p. 943. |
| VI. | Particular proceedings | 2201 | *Post*, p. 964. |

## PART I.—ORGANIZATION OF COURTS

| Chapter | | Sec. |
|---|---|---|
| 1. | Supreme Court | 1 |
| 3. | Courts of appeals | 41 |
| 5. | District courts | 81 |
| 7. | Court of Claims | 171 |
| 9. | Court of Customs and Patent Appeals | 211 |
| 11. | Customs Court | 251 |
| 13. | Assignment of judges to other courts | 291 |
| 15. | Conferences and councils of judges | 331 |
| 17. | Resignation and retirement of judges | 371 |
| 19. | Distribution of reports and digests | 411 |
| 21. | General provisions applicable to courts and judges | 451 |

## CHAPTER 1—SUPREME COURT

Sec.
1. Number of justices; quorum.
2. Terms of court.
3. Vacancy in office of Chief Justice; disability.
4. Precedence of associate justices.
5. Salaries of justices.
6. Records of former court of appeals.

### § 1. Number of justices; quorum

The Supreme Court of the United States shall consist of a Chief Justice of the United States and eight associate justices, any six of whom shall constitute a quorum.

### § 2. Terms of court

The Supreme Court shall hold at the seat of government a term of court commencing on the first Monday in October of each year and may hold such adjourned or special terms as may be necessary.

### § 3. Vacancy in office of Chief Justice; disability

Whenever the Chief Justice is unable to perform the duties of his office or the office is vacant, his powers and duties shall devolve upon the associate justice next in precedence who is able to act, until such disability is removed or another Chief Justice is appointed and duly qualified.

### § 4. Precedence of associate justices

Associate justices shall have precedence according to the seniority of their commissions. Justices whose commissions bear the same date shall have precedence according to seniority in age.

62 Stat.]     80th CONG., 2d SESS.—CH. 645—JUNE 25, 1948     **683**

[CHAPTER 645]

### AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

June 25, 1948
[H. R. 3190]
[Public Law 772]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., § ——", as follows:

Title 18, U. S. Code.
Codification and enactment into positive law.

### TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. | |
|---|---|---|---|
| I. | CRIMES | 1 | *Infra.* |
| II. | CRIMINAL PROCEDURE | 3001 | *Post,* p. 813. |
| III. | PRISONS AND PRISONERS | 4001 | *Post,* p. 847. |
| IV. | CORRECTION OF YOUTHFUL OFFENDERS | 5001 | *Post,* p. 856. |

### PART I—CRIMES

| Chapter | Sec. |
|---|---|
| 1. General provisions | 1 |
| 3. Animals, birds and fish | 41 |
| 5. Arson | 81 |
| 7. Assault | 111 |
| 9. Bankruptcy | 151 |
| 11. Bribery and graft | 201 |
| 13. Civil rights | 241 |
| 15. Claims and services in matters affecting government | 281 |
| 17. Coins and currency | 331 |
| 19. Conspiracy | 371 |
| 21. Contempts constituting crimes | 401 |
| 23. Contracts | 431 |
| 25. Counterfeiting and forgery | 471 |
| 27. Customs | 541 |
| 29. Elections and political activities | 591 |
| 31. Embezzlement and theft | 641 |
| 33. Emblems, insignia, and names | 701 |
| 35. Escape and rescue | 751 |
| 37. Espionage and censorship | 791 |
| 39. Explosives and combustibles | 831 |
| 41. Extortion and threats | 871 |
| 43. False personation | 911 |
| 45. Foreign relations | 951 |
| 47. Fraud and false statements | 1001 |
| 49. Fugitives from justice | 1071 |
| 51. Homicide | 1111 |
| 53. Indians | 1151 |
| 55. Kidnaping | 1201 |
| 57. Labor | 1231 |
| 59. Liquor traffic | 1261 |
| 61. Lotteries | 1301 |
| 63. Mail fraud | 1341 |
| 65. Malicious mischief | 1361 |
| 67. Military and Navy | 1381 |
| 69. Nationality and citizenship | 1421 |
| 71. Obscenity | 1461 |
| 73. Obstruction of justice | 1501 |
| 75. Passports and visas | 1541 |
| 77. Peonage and slavery | 1581 |
| 79. Perjury | 1621 |
| 81. Piracy and privateering | 1651 |
| 83. Postal service | 1691 |
| 85. Prison-made goods | 1761 |
| 87. Prisons | 1791 |
| 89. Professions and occupations | 1821 |
| 91. Public lands | 1851 |
| 93. Public officers and employees | 1901 |
| 95. Racketeering | 1951 |

672                    PUBLIC LAWS—CH. 644—JUNE 25, 1948                    [62 Stat.

June 25, 1948
[H. R. 6412]
[Public Law 771]

[CHAPTER 644]

AN ACT

To codify and enact into law Title 3 of the United States Code, entitled "The President".

Title 3, U. S. Code.
Codification and enactment into positive law.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 3 of the United States Code, entitled "The President", is codified and enacted into positive law and may be cited as "3 U. S. C., § ——", as follows:

## TITLE 3—THE PRESIDENT

| Chap. | | Sec. |
|---|---|---|
| 1. | PRESIDENTIAL ELECTIONS AND VACANCIES | 1 |
| 2. | OFFICE AND COMPENSATION OF PRESIDENT | 101 |
| 3. | PROTECTION OF THE PRESIDENT; THE WHITE HOUSE POLICE | 201 |

Infra.
Post, p. 678.
Post, p. 679.

### CHAPTER 1—PRESIDENTIAL ELECTIONS AND VACANCIES

Sec.
1. Time of appointing electors.
2. Failure to make choice on prescribed day.
3. Number of electors.
4. Vacancies in electoral college.
5. Determination of controversy as to appointment of electors.
6. Credentials of electors; transmission to Secretary of State and to Congress; public inspection.
7. Meeting and vote of electors.
8. Manner of voting.
9. Certificates of votes for President and Vice President.
10. Sealing and endorsing certificates.
11. Disposition of certificates.
12. Failure of certificates of electors to reach President of Senate or Secretary of State; demand on State for certificate.
13. Same; demand on district judge for certificate.
14. Forfeiture for messenger's neglect of duty.
15. Counting electoral votes in Congress.
16. Same; seats for officers and Members of two Houses in joint meeting.
17. Same; limit of debate in each House.
18. Same; parliamentary procedure at joint meeting.
19. Vacancy in offices of both President and Vice President; officers eligible to act.
20. Resignation or refusal of office.

## CHAPTER 1—PRESIDENTIAL ELECTIONS AND VACANCIES

#### TIME OF APPOINTING ELECTORS

§ 1. The electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President.

#### FAILURE TO MAKE CHOICE ON PRESCRIBED DAY

§ 2. Whenever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by law, the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct.

#### NUMBER OF ELECTORS

§ 3. The number of electors shall be equal to the number of Senators and Representatives to which the several States are by law entitled at the time when the President and Vice President to be chosen come into office; except, that where no apportionment of Representatives has been made after any enumeration, at the time of choosing electors,

TOM HARKIN
IOWA

(202) 224-3254
TTY (202) 224-4633
Tom_Harkin@Harkin.Senate.Gov

COMMITTEES:
AGRICULTURE

APPROPRIATIONS

SMALL BUSINESS

LABOR AND HUMAN
RESOURCES

# United States Senate

WASHINGTON, DC 20510-1502

September 16, 2002

Dane Yirkovsky
Federal Medical Center, PMB 4000
06821-029, Unit B
Rochester, MN 55903

Dear Dane:

Thank you for contacting me.  I hope you will pardon my delay in responding to you.

I appreciate you sharing your experiences with me regarding your situation.  I share your belief that your sentence was extreme for the crime for which you were convicted.  I have become increasingly concerned that in certain cases mandatory minimum sentences are in fact limiting judicial discretion by restricting the abilities of judges to set appropriate penalties for offenses. I plan to continue to follow this case and others like it.

Again, I apologize for my delay in getting back to you. Please keep in touch and continue to keep me informed of your views and concerns.

Sincerely,

Tom Harkin
United States Senator

TH/arm

150 FIRST AVENUE, NE
SUITE 370
CEDAR RAPIDS, IA 52407-4884
(319) 365-4504

210 WALNUT ST.
733 FEDERAL BLDG.
DES MOINES, IA 50309
(515) 284-4574

131 E. 4TH ST.
314B FEDERAL BLDG.
DAVENPORT, IA 52801
(319) 322-1338

350 WEST 6TH ST.
315 FEDERAL BLDG.
DUBUQUE, IA 52001
(319) 582-2130

320 6TH ST.
110 FEDERAL BLDG.
SIOUX CITY, IA 51101
(712) 252-1550

Ocotber 17, 2006


To:  U.S. Department of Justice
     Paul D. Clement, Solicitor General
     Constiution Ave & 10th NW
     Washington, D.C. 20530

Fm:  Dane Allen Yirkovsky
     06821-029
     OAKDALE-FCI
     P.O. Box 5000
     Oakdale, La 71463

          RE:  Letter by Solicitor General's Office, June of 2002 concern-
               ing my case at bar.

     Dear Mr. Clement,

          In June of 2002 I received a letter from this office concering
     my case; involving a 15 year sentence for a bullet that I only
     possessed for '20' seconds, prior to my attempts to dispose of it.
     This office mentioned arguing "innocent possession" and "commerce
     nexus", i.e. where does interstate commerce stop?  All three Appeals
     Court Judges' believed I received far to much time for the issues
     at bar, however, their [hands] were tied:  mandatory sentencing.
     See Petition for Common Law Writ of Habeas Corpus.

          Being Pro-se I have attempted to make my argument concerning
     "innocent possession" and "commerce nexus" contained within the
     documents and papers filed herein.  I am also arguing actual jur-
     isdiction over subject matter, by the federal government.

          I look forward to your timely response.

          Very truly yours.

          Sincerely,
          /S/
          Dane Allen Yirkovsky


     Cc:  file
          District Court of Columbia
          Paul D. Clement, Solicitor General

     : enclosure(s)

## CIVIL RIGHTS & CIVIL LIBERTIES COMPLAINT

Civil Rights & Civil Liberties Complaints
Office of the Inspector General - US DOJ
950 Pennsylvania Ave, NW - Room 4322
Washington, D.C. 20530

Dane Yirkovsky
06821-029, Unit B1
Federal Medical Center
PMB 4000
Rochester, MN 55903-4000

Dear Inspector General:

I am writing to you today to familiarize you with my "criminal" case, and the role that the mandatory-minimum statute played in the unconscionable 15 year sentence I was given for possession of a single .22 cartridge.

At Judge Michael J. Melloy's recent confirmation, Senator Tom Harkin and Melloy discussed my case and mandatory-minimum sentencing.  They both expressed dissatisfaction with Congress' attempt to legislate justice.  The enclosed article covers most of the story, so I'll just quickly summarize a few additional relevant facts.

Briefly, my story is that in December of 1998 I found a single live round of .22 caliber ammunition.  I picked it up and put it in a safe place in my room.  That same month police searched my room in response to a bogus claim. They found the .22 round, but no gun or anything else to charge me with.

I was arrested for being a felon in possession of ammunition, and then charged as an "armed career criminal"—even though I had never used a weapon during my prior offenses.  The judge, Michael J. Melloy, was forced to apply the congressionally-enacted "mandatory-minimum statute," which imposes a 15 year sentence for my "crime."  Fifteen years of federal time without parole, just because I was safekeeping a public hazard!

Three appellate judges characterized my sentence as "an extreme penalty." And more recently, a panel of judges reviewed my case.  Three of them concluded their minority (dissenting) opinion with the following bold statement:

> The draconian nature of this sentence is as evident to me as it was to the panel, and the severity of sentences in general under the U.S. Sentencing Guidelines and recent congressional enactments is, or ought to be, a matter of great public concern to every citizen.  The number of people incarcerated in this country is unparallelled and growing exponentially, and the costs of criminal penalties in terms of dislocated lives and public treasure is probably incalculable.  [T]he sentence is grossly disproportionate to the offense for which it was imposed. (Arnold, Wollman & Bowman.)

Unfortunately, these judges were unable to change my sentence.

The enclosed article is just one of several that Iowa newspapers have recently published about my case and the sentencing guidelines issue, using my case to demonstrate how Congress is intruding too far into judicial territory.

For further information and insight into my case and the application of the mandatory-minimum sentencing statute, please contact me or the following:

Senator Tom Harkin (D, Iowa)
Judge Michael J. Melloy, (319) 286-2330; Cedar Rapids
FAMM: Families Against Mandatory Minimums, (202) 822-6700

I will be very grateful for any attention that you can give to my case and to the federal sentencing and mandatory-minimums issues.

Respectfully,

Dane Yirkovsky